## MASSCE & WHITNEY *v.* UNITED STATES (No. 995).[1]

BINDINGS AND TRIMMINGS.

> No commercial designation is shown. The plain surface of the fabric covers more than half of the fabric itself and the area of this plain surface makes it clear the merchandise is designed to be something more than a mere edge for the side that is ornamented. It can not therefore be deemed a trimming, and the evidence moreover shows the use to be chiefly for binding. It was dutiable as binding under paragraph 320, tariff act of 1897.

United States Court of Customs Appeals, December 16, 1912.

TRANSFERRED from United States District Court for the Southern District of New York, G. A. 6671 (T. D. 28457).

[Reversed.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise involved in this case consists of certain narrow woven fabrics which are composed in chief value of cotton. The fabrics are in running lengths and are less than an inch in width. Along one edge of the article appears a continuous ornamental design which covers less than half of its surface; the remainder of the surface, extending from the ornamental design to the opposite edge, is entirely plain.

The merchandise was imported under the tariff act of 1897, and was assessed with duty at the rate of 60 per cent ad valorem under the provision for trimmings in paragraph 339 of the act. The importers filed their protest against that assessment, claiming a duty of 45 per cent ad valorem under the provision for bindings in paragraph 320 of the act.

---

[1] Reported in T. D. 33042 (23 Treas. Dec., 613).

The Board of General Appraisers heard the protest upon evidence and overruled the same. The case now comes to this court upon appeal by transfer from the United States District Court for the Southern District of New York. In that court additional testimony was taken in the case, but no decision was entered.

The following is a copy of paragraphs 320 and 339 of the tariff act of 1897:

320. Bandings, beltings, bindings, bone casings, cords, garters, lining for bicycle tires, ribbons, suspenders and braces, tapes, tubing, and webs or webbing, any of the foregoing articles made of cotton or other vegetable fiber, whether composed in part of india-rubber or otherwise, and not embroidered by hand or machinery, forty-five per centum ad valorem; spindle banding, woven, braided or twisted lamp, stove, or candle wicking made of cotton or other vegetable fiber, ten cents per pound and fifteen per centum ad valorem; loom harness or healds made of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, fifty cents per pound and twenty-five per centum ad valorem; boot, shoe, and corset lacings made of cotton or other vegetable fiber, twenty-five cents per pound and fifteen per centum ad valorem; labels, for garments or other articles, composed of cotton or other vegetable fiber, fifty cents per pound and thirty per centum ad valorem.

339. Laces, lace window curtains, tidies, pillow shams, bed sets, insertings, flouncings, and other lace articles; handkerchiefs, napkins, wearing apparel, and other articles, made wholly or in part of lace, or in imitation of lace; nets or nettings, veils and veilings, etamines, vitrages, neck rufflings, ruchings, tuckings, flutings, and quillings; embroideries and all trimmings, including braids, edgings, insertings, flouncings, galloons, gorings, and bands; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a letter, monogram, or otherwise; tamboured or appliquéed articles, fabrics, or wearing apparel; hemstitched or tucked flouncings or skirtings, and articles made wholly or in part of rufflings, tuckings, or ruchings; all of the foregoing, composed wholly or in chief value of flax, cotton, or other vegetable fiber, and not elsewhere specially provided for in this Act, whether composed in part of india rubber or otherwise, sixty per centum ad valorem: *Provided*, That no wearing apparel or other article or textile fabric, when embroidered by hand or machinery, shall pay duty at a less rate than that imposed in any schedule of this Act upon any embroideries of the materials of which such embroidery is composed.

As appears from the foregoing statement, the case presents but a single issue, namely, whether or not the fabric in question is a binding within paragraph 320 of the act of 1897.

It may be stated that no commercial designation of the merchandise is proven by the testimony. Three witnesses testified that the article bears the trade name of trimming; three others testified that it is commercially known as binding; one stated that it is commercially called webbing; another, braid; and yet another, tape. In view of this confusing and unsatisfactory state of the record, the parties agree that no definite, uniform, and general trade classification of the article is established by the proofs; the importation must therefore be

classified according to the common and usual meaning of the relevant terms.

In common acceptation a trimming is a fabric which is attached to a garment or the like for ornamentation, while a binding is a narrow strip of goods sewed over the edge of a garment or other material for its protection. The one article is essentially decorative in character, while the other is useful. Yet it can not be said that either article necessarily loses its nature or its name if in a given case it incidentally serves the same purpose as the other. A trimming may incidentally protect the material to which it is applied and yet remain a trimming; likewise a binding may incidentally ornament the fabric to which it is attached and yet remain a binding. In each case the classification of the article should follow that use to which the article is primarily adapted and commonly applied.

In the present case the appearance of the merchandise, and the testimony concerning it, convince the court that the importation is designed primarily to cover and protect the edge of other goods, and that its ornamental margin is merely an incident to that use. As first above stated the face of the woven fabric is divided lengthwise into two contracting sides or margins, one of which is ornamented by a running design, while the other is entirely plain. The fabric thus aptly lends itself to use as a binding, where one side is exposed to view and the other side is concealed. When so applied each margin performs a distinctive service for which it is fit, and no waste of material results. On the other hand, if the fabric be used exclusively as a trimming, the plain margin serves no appropriate purpose at all, but is mere waste. This does not seem to be consistent with the construction of the article, for the plain surface covers more than half of the fabric, and from its relative area it is evidently designed to be something more than a mere edge for the ornamental side. This fact seems to favor the classification of the article as a binding rather than a trimming; for, as stated, if it be used as a mere trimming more than half of its surface is useless, adding nothing to the ornamental effect of the article; whereas if it be used as a binding, the entire material is useful, the plain margin serving as a cover for the protected edge and the figured margin serving as an incidental embellishment. This view is supported also by the testimony in the case, for it fairly appears therefrom that the fabric is, in fact, chiefly used as a binding.

It is argued that a classification of the importation under paragraph 320 would place it within a group of articles which are manifestly useful in character but not ornamental, and that this result is inconsistent with the fact that this fabric is at least partly ornamental in character. However, it may be observed that paragraph

320 includes garters, ribbons, suspenders, and webbing, not embroidered by hand or machinery, and these articles, like that at bar, frequently exhibit some ornamentation, even if not embroidered. In such case, however, as in this, the ornamentation of the given article is but incidental to its use.

These considerations lead to the conclusion that the importation was dutiable under the act of 1897 as binding, and not as trimming. In this view the collector erred in the assessment, and the decision of the board sustaining the same is therefore *reversed.*