UNITED STATES *v.* GREENWALD'S LINEN IMPORTERS (No. 3201)[1]

[1] T. D. 43672.

United States Court of Customs and Patent Appeals, October 28, 1929

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter*, special attorney, of counsel), for the United States.

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 10, 1929, by Mr. Carter and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This appeal involves the proper classification of certain handkerchief cases, classified by the collector at New York as "linen handkerchief cases appliquéd" and "embroideries cases" and returned for duty at 75 per centum ad valorem under paragraph 1430 of the Tariff Act of 1922.

Appellee protested, claiming classification of the merchandise under paragraph 1021 and assessment of duty thereon at the rate of 40 per centum ad valorem.

The competing provisions of the two paragraphs are as follows:

PAR. 1021. All woven articles, finished or unfinished, and all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the

component material of chief value, not specially provided for, 40 per centum ad valorem.

PAR. 1430. * * * Embroideries not specially provided for, and all fabrics and articles embroidered in any manner by hand or machinery, whether with a plain or fancy initial, monogram, or otherwise, or * * * appliquéd * * *; all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of yarns, threads, filaments, * * * 75 per centum ad valorem.

The Customs Court sustained the protests and the Government appeals.

The protests filed covered three items shown upon the invoices as Nos. 659, 7142, and 7143.

Upon the trial below the appellee abandoned any claim that the merchandise involved in Nos. 7142 and 7143 of the invoice was improperly classified or assessed, and offered no proof to sustain that portion of its protests.

Appellant's counsel in his brief describes the merchandise in question as follows:

Exhibit 1, introduced as a sample representative of item 659, consists of a linen handkerchief case, oblong in shape, lined with a white fabric, having a flap. A small silk cord is attached to the edge of the case. The cord also extends over the surface of the case in the form of a semicircle. On the flap appears an ornament made of cord in the form of small loops. One of these loops extends over the edge of the flap and is used to encircle a button attached to the body of the case to keep the flap closed. There is also a button attached to the center of the cord ornamentation. This latter button and three of the loops of the cord ornamentation have no utilitarian use, but are strictly ornamental.

This is a correct description, although it should be further stated that an inspection of the exhibit shows that the silk cord attached to the edge of the case and that forming the semicircle upon the surface is composed of a single piece of cord, the part attached to the edges being about 33 inches in length, and the part forming the semicircle about 12 inches. Also, as to the cord upon the flap consisting of 4 loops, 1 of which is used to encircle the button attached to the body of the case to keep the flap closed, these 4 loops are formed out of a single cord, and while the 3 loops are ornamental, the obvious primary purpose of the use of the cord is to serve to button the flap. Both cords are attached to the article by means of threads.

Appellant contends that the use of the silk cords in the manner stated amounts to an appliqué and that the handkerchief cases are therefore appliquéd within the meaning of that provision in paragraph 1430. Alternatively, appellant claims that the articles are embroidered and dutiable at 75 per centum ad valorem, the same rate at which they were assessed under paragraph 1430, or if it should be held that the use of the cord is neither an appliqué nor embroidery, that it is a trimming attached to the cases solely for ornamental purposes.

The lower court, in a well-considered opinion, found that the merchandise in question does not fall within the definition for "appliqué," as adopted and followed by the courts, and that it is properly dutiable at the rate of 40 per centum ad valorem under paragraph 1021.

The question of what constitutes "appliqué" within the meaning of that term as used in paragraph 1430 has been before this court many times.

In *United States* v. *Hamburger Levine Co.*, 5 Ct. Cust. Appls. 217, T. D. 34382, cited and relied upon by the court below, very extended consideration was given to the definition of the term "appliqué." That case involved the classification of a cotton fabric, ornamented with strips or bands of other cotton goods sewed upon the surface. This court in its opinion, after quoting a large number of definitions from dictionaries, encyclopedias, and manuals of needlework, said:

Upon a comparison and consideration of the foregoing authorities the court is inclined to the view that they sustain the claim of the importers, and that the strips or bands in question are trimmings, but are not appliqué. It is true that in the case of several of the definitions above copied the word "appliquéd" is given a general meaning consistent with the claim of the Government, but in relation to the ornamentation of one fabric by means of figures or designs taken from another, the word is limited to such designs or patterns as are cut in outline from the other fabric and does not include ribbonlike strips of figured goods sewn in their entirety upon garments.

The court later in its opinion said:

* * * In the case of *J. H. Thorp & Co.*, under the Tariff Act of 1897, decided by the board of General Appraisers in 1899 (T. D. 21375), the following definition of the term in question was given by Fischer, G. A.:

This merchandise corresponds with the definition given to the word "appliqué" by all the standard dictionaries and with the trade understanding. The general definition is: Ornamentation with a pattern, which has been cut out of another color or stuff, applied or transferred to a foundation.

The court then held that the articles there in question were not appliquéd.

Appellant calls attention to the following language used in the opinion in that case:

Many of the cases cited in the briefs relate to ornaments such as cords, threads intertwined with gilt paper, or similar articles which, when sewed upon garments, do not form part of the surface of the garment itself, but stand out in relief therefrom.

Appellant contends that this language clearly distinguishes that case from the one at bar, and that the decision in that case is not applicable here. This will be discussed later.

The question of the application of the term "appliqué" next came before this court in the case of *Loewenthal & Co.* v. *United States*,

6 Ct. Cust. Appls. 209, T. D. 35464. That case involved the classification of certain beaded articles. In its opinion the court said:

Can this merchandise be said to be articles appliquéd, as that term is used in both the foregoing quoted paragraphs?

We think not. This court in a recent decision, *United States* v. *Hamburger Levine Co.* (5 Ct. Cust. Appls. 217; T. D. 34382), interpreted that very term. The lexicographic definitions and scientific authorities were carefully reviewed and a definitive excerpt by Fischer, G. A., based upon the ordinary and trade meaning of the term in *Thorp's* case, G. A. 4481 (T. D. 31375). adopted by the court as the accepted meaning of the phrase, to wit:

This merchandise corresponds with the definition given to the word "appliqué" by all the standard dictionaries and with the trade understanding. The general definition is: Ornamentation with a pattern, which has been cut out of another color or stuff, applied or transferred to a foundation.

The case of *United States* v. *McGibbon & Co.*, 7 Ct. Cust. Appls. 290, T. D. 36803, involved the classification of comfortables in chief value of silk, edged with a silk cord. The question was whether the article was appliquéd by reason of the use of the silk cord. The court cited the *Hamburger Levine Co.* case, *supra*, quoting the definition of appliqué above quoted, and stated:

The record discloses that the particular cord was attached around the edges of the article as or simulating a binder or fancy edge without being cut from another article and without being laid on this article in or to form any motif or figure. Such does not constitute an appliqué within the said decisions of this court.

It is to be observed that the major portion of the cord here in question was used in the same manner and for the same purpose, namely, a binder or fancy edge, as was the cord in the case last cited.

It is clear that the article in question does not come within the definition of appliqué adopted by this court. The handkerchief cases in question are not "ornamented with a pattern which has been cut out of another color or stuff, applied or transferred to a foundation."

In order to hold the articles in question to be appliquéd, we must modify the definition deliberately adopted by this court by eliminating the words "cut out of another color or stuff," so that the definition would read "ornamented with a pattern applied or transferred to a foundation." This we can not do. In the case of *United States* v. *Mills, Duflot & Co.*, 10 Ct. Cust. Appls. 49, T. D. 38296, the court, after quoting from the *Hamburger Levine Co.* case, *supra*, said:

That opinion aptly concludes the question that the limitations of the adopted definition are required in order to maintain any rational distinction between the frequent tariff terms "trimmed," "ornamented," and "appliquéd" articles.

Indeed, if sound differentiation is to be maintained between the many closely related provisions of the statute this confinement of the definition of "appliquéd" is necessary.

Not coming within the definition adopted by this court, we must hold that the handkerchief cases in question are not appliquéd.

We are not unmindful of the case of *United States* v. *A. A. Vantine & Co.*, 166 Fed. 735, in which the Circuit Court of Appeals, Second Circuit, decided that certain silk fabrics to which had been applied a gilt cord, in loops of various shapes and sizes, were appliquéd. In so deciding the court adopted as the proper definition of "appliqué":

Any ornament laid out and applied on another surface, such as cloth, wood, or metal; also a piece of work or the kind of ornamentation thus produced.

Of course, under such a definition the merchandise there in question was clearly appliquéd; but, as has already been shown, this court has adopted a much narrower and, we think, more correct definition, and for that reason the *Vantine* case has no application.

We have also examined with care the various Treasury decisions cited in appellant's brief, and find they were all rendered prior to the definition of appliqué adopted by this court in the *Hamburger Levine Co.* case.

While it is true that in the *Hamburger Levine Co.* case, *supra*, the court observed that many of the cases cited in the briefs related to ornaments such as cords, etc., which when sewed upon garments stand out in relief from the surface, and stated that such articles have in many cases been held to be appliquéd, there was no holding by this court that they were such, and in any event the language relied upon by appellant in that case was dictum and in no wise modified the general definition of appliqué adopted by it.

We next come to the contention of appellant that if the articles in question are not appliquéd they are embroidered within the meaning of paragraph 1430. This court, in *United States* v. *Grass Bros.*, 13 Ct. Cust. Appls. 33, T. D. 40866, discussed the question of what constitutes embroidered articles. In its opinion, it quoted with approval the definition given of embroidery in Funk & Wagnalls Standard Dictionary as—

ornamental work done with the needle on cloth, canvas, leather, etc. The work may be done by hand or with machinery, and threads of cotton, silk, silver, gold, etc., may be used; but embroidery is always work added to the completed fabric by means of a needle. Any variegated or elaborate ornamentation, especially if it resemble ornamental needlework, adornment, embellishment.

The court then observed that "Embroidery is made by stitching, but all stitching is not embroidery."

We are clear that the sewing of a silk cord like that here in question upon another fabric does not make the fabric an embroidered article within the meaning of paragraph 1430.

The only question remaining, so far as classification is concerned, is whether the merchandise in question is in part of trimming. Appellant contends that if it is neither an article appliquéd nor embroidered it is an article "composed in part, however small, of trimmings," and therefore should be classified under the first part of

paragraph 1430. If this contention be correct, the judgment must be reversed and the protest overruled, because although the classification of the collector was erroneous, the merchandise would be not dutiable under any provision claimed in the protest.

Is the silk cord as used upon the article here in question a trimming? There was no proof upon the trial as to the ordinary use of the silk cord in question or as to commercial designation. The importer's witness stated that the purpose of the cord was to serve as a reinforcement of the edge of the article and as a buttonhole. Therefore, if this silk cord, as used upon the article, is a trimming, we must so conclude solely from an inspection of the article, a sample of which was before us. We do not think that such inspection establishes that the silk cord is used as a trimming. As has already been stated, there are two separate cords used upon the articles. One is about 45 inches in length, 33 inches of which serves, as testified in the court below, as a reinforcement of the edges of the article, and the other, about 6 inches in length, forms four loops, one of which is used as a buttonhole. We think the chief use of the cord in the one case is for the protection of the edges of the article, and in the other to form a buttonhole, and therefore it can not be held to be a trimming.

The fact that one cord was longer than necessary for the protection of the edges, and the extra length was laid upon the surface in a semicircle, and that the other cord was longer than necessary to form a buttonhole and formed three loops that served no useful purpose does not, in our opinion, bring the cords within the term "trimming," as used in paragraph 1430. In both cases the chief purpose of the cord is a useful one.

In the case of *Massce & Whitney* v. *United States*, 3 Ct. Cust. Appls. 470, T. D. 33042, there was involved the classification of certain narrow woven fabrics; along the edge appeared a continuous ornamental design covering less than one-half of its surface, the remainder being plain. The Government contended that the article was a trimming, but the court held that it was dutiable as a binding and not a trimming. In its opinion the court said:

In common acceptation a trimming is a fabric which is attached to a garment or the like for ornamentation, while a binding is a narrow strip of goods sewed over the edge of a garment or other material for its protection. The one article is essentially decorative in character, while the other is useful. Yet it can not be said that either article necessarily loses its nature or its name if in a given case it incidentally serves the same purpose as the other. A trimming may incidentally protect the material to which it is applied and yet remain a trimming; likewise a binding may incidentally ornament the fabric to which it is attached and yet remain a binding. In each case the classification of the article should follow that use to which the article is primarily adapted and commonly applied.

In the case at bar, the only evidence in the court below upon the subject of the use of the cord was that it was to reinforce the edge

and to form a buttonhole. An inspection of the article does not controvert this testimony except as to the semicircle on the surface and the three unnecessary loops of the buttonhole cord. We can not say that the chief use of the cords is not, as testified, to serve a useful purpose. Therefore we find that the article here in question was not composed in part of trimming, and it should be classified as held by the court below under paragraph 1021.

Only one other question remains. Appellant points out that the protests of appellee were directed against the classification of "handkerchief cases embroidered and appliquéd," and therefore covered articles in the invoices under Nos. 659, 7142, and 7143. The articles under the last two invoice numbers were classified as embroideries. As to such items the importer offered no testimony, and its counsel expressly stated that its contentions were limited to the merchandise appearing under invoice No. 659.

The lower court did not in the judgment entered overrule the protest as to the merchandise covered by said invoice items 7142 and 7143, and appellant submits that such failure was error. This was clearly inadvertence upon the part of the court below. The judgment should have overruled the protests in so far as they covered merchandise included in invoice items 7142 and 7143. In all other respects the judgment of the court below is *affirmed*. The cause is *remanded* with directions that the judgment be *modified* by overruling so much of the protests as relate to merchandise covered by said invoice items 7142 and 7143.