(C. D. 324)

STERLING BUTTON CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided April 29, 1940)

Brooks & Brooks (Ernest F. A. Place and Frederick W. Brooks, Jr., of counsel, for the plaintiff.

Webster J. Oliver, Assistant Attorney General (Richard E. FitzGibbon, special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges; KINCHELOE, J., not participating

TILSON, Judge: The merchandise, the classification of which is involved in the suits listed in schedule A, hereto attached and made a part hereof, was assessed with duty at 90 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930. Plaintiff claims the same to be properly dutiable at 35 per centum ad valorem under paragraph 912 of said act as fabrics with fast edges, not exceeding 12 inches in width, wholly or in chief value of cotton, not specially provided for.

There is no report among the official papers which even indicates how the collector classified the merchandise, whether as laces, lace fabrics, lace articles, made by hand or on a lace, net, knitting, or braiding machine, plain or figured, lace window curtains, veils, veilings, flouncings, allovers, galloons, edgings, trimmings, fringes, gimps, ornaments, braids, loom woven and ornamented in the process of weaving, or made by hand, or on a lace, knitting, or braiding machine, fabrics and articles embroidered, tamboured, appliqued, ornamented with beads, bugles, or spangles, or from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, composed wholly or in chief value of filaments, yarn, threads, tinsel wire, lame, bullions, metal threads, beads, bugles, spangles, or rayon or other synthetic textile.

An examination of the invoices covered by these cases fails to disclose anything from which any classification might be inferred. Most of the invoices contain the notation in ink: "1529 90%." None of the invoices contain any notation in ink or pencil to show that the examiner, the appraiser, or the collector considered the merchandise

to be trimmings, or any of the other numerous possible classifications under said paragraph 1529.

The record in this case does not bring it within the ruling in *United States* v. *Bullocks*, 24 C. C. P. A. 41, T. D. 48330, nor does it bring it within the ruling of the appellate court in *United States* v. *Bullocks*, 25 C. C. P. A. 381, T. D. 49465. In the first *Bullock* case, *supra*, the court said:

> * * * The advisory classification of the appraiser as given on the invoice describes the merchandise as having elastic braid, and, whether the collector's report be considered or not, the record is sufficient to establish the fact that the merchandise was classified in his original decision under paragraph 1529 (a).

In this case we have no advisory classification of any kind by the appraiser, and therefore the statement that "The advisory classification of the appraiser as given on the invoice describes the merchandise as having elastic braid," has no application here. Had the appraiser described the merchandise in this case on the invoice as a "trimming" under the above authorities we would have been compelled to accept that as the classification of the collector, although we are not in harmony with the rule there laid down, but we have no such record before us in this case.

In the case of *United States* v. *White Sulphur Springs Co.*, 21 C. C. P. A. 203, T. D. 46728, the appellate court stated:

> No extensive review of the record seems to be necessary. There is nothing therein tending to show that the merchandise is bath salts. The appraiser's report does not so designate it, nor did the collector so classify it. His classification was as a toilet preparation. Hence there is no presumption from the classification itself that it is bath salts, and no proof was introduced which even intimates it to be such.
>
> Where a paragraph of a tariff act makes provision for two or more distinctly different kinds of merchandise and the collector of customs specifically classifies an importation as one of those kinds, the legal presumption that such classification is correct attaches, but such presumption of correctness is limited to the specific classification made, and, in case it be found that the merchandise is not such specific kind, it may not be held that there is a legal presumption that it is some other kind which happens to be included in the same paragraph but of which the appraiser gives no description and the collector makes no mention in his classification.

In the present case there is nothing tending to show that the merchandise is trimmings. The appraiser does not so designate it nor does the collector so classify it. There can be no presumption from a complete lack of a classification that the merchandise was classified as trimmings, and no proof was introduced which even intimates it to be such. If there be no classification of any kind, it may not be held that there is a legal presumption that the merchandise is some one of the many kinds which happen to be included in the paragraph but of which the appraiser gives no description and

the collector makes no mention in his refusal to furnish this court with a classification.

Until there has been some act of classification by the collector there can certainly be no presumption attaching to such act. Unless there be some act there can be no presumption of correctness, and in this case we have a complete absence of any evidence of any act of the collector in classifying the merchandise, and consequently there must be a complete absence of any presumption.

The case seems to have been tried upon the theory that the merchandise had been classified as a trimming, and upon that theory the case will be decided. However, this will not give any presumption of correctness to anything the collector did, or failed to do. It appears to be such a simple and easy matter for the collector to furnish this court with a definite classification that no justification exists for his failure to do so.

On some of the invoices, at least, the merchandise is described as "trimmings," but, at best, this is nothing more than an admission against interest, and the importer is not precluded from showing the incorrectness of the description when the same is contradicted by the protest.

It was agreed at the trial that the merchandise here involved was composed in chief value of cotton, and there was also admitted in evidence a sample of the merchandise. The merchandise comes in lengths of 39 inches, and is approximately ⅝ of an inch wide, is a woven fabric, and has fast edges. On one side or edge of the merchandise there are certain wood slots, which cover 36 of the 39 inches of the length of the merchandise. According to the evidence the merchandise is used as a binding for seams in coat pockets, on ladies garments, on slippers and on gloves to prevent the same from sagging. It is not and could not be used in the 39-inch lengths in which imported, but has to be cut up into the proper lengths for the uses to which it is to be put. It is not ornamental or decorative and does not serve to finish or trim the article to which it is attached, but, according to the evidence, serves only a utilitarian purpose.

The merchandise appears to resemble rather closely that passed upon in *Massce* v. *United States*, 3 Ct. Cust. Appls. 470, T. D. 33042, concerning which the appellate court said:

In common acceptation a trimming is a fabric which is attached to a garment or the like for ornamentation, while a binding is a narrow strip of goods sewed over the edge of a garment or other material for its protection. The one article is essentially decorative in character, while the other is useful.

The evidence is undisputed that the merchandise is not and cannot be used commercially in the condition in which imported, but has to be cut to the proper lengths to fit the pocket or other part of the article

or garment to which it is to be attached, and, in most instances at least, is invisible after being attached.

In the case of *Robinson* v. *United States*, 121 Fed. 204, the lower court had found the merchandise to be woven wholly of silk, from 4 to 12 inches wide "used directly in these widths, either exclusively or chiefly, for trimming women's hats, bonnets, or other wearing apparel; are generally known in commerce as chiffon or mousseline bands, or as gauze ribbons, or as gauze bands," and held the same to be dutiable as trimmings. In reversing that decision the Circuit Court held:

> These articles are not in themselves trimmings, and will not become such until they are made into designs to be applied as trimmings, or are made into trimmings as they are applied to articles being trimmed. That they are used for making trimmings does not make them such.

In line with the above holding is the case of *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, wherein our appellate court said:

> \* \* \* The importation does not consist of chair backs or seats, but is a material designed to be used for covering the backs and seats of furniture.

To the same effect is the decision in *United States* v. *Harding Co.*, 21 C. C. P. A. 307, T. D. 46830, which holds:

> In our opinion, the imported merchandise is not parts, finished or unfinished, of automobiles, but a mere material, "commercially capable" of various uses. But, even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

So, in the instant case, if it could be said that the merchandise were dedicated to the exclusive use of making trimmings, it would be, nevertheless, nothing more than a mere material for such use.

In the light of the evidence concerning the involved merchandise, the above authorities clearly point to its proper classification as fabrics with fast edges, as claimed by the plaintiff, rather than as trimmings, as claimed by the defendant.

If, in its broadest sense, the term "trimmings" might be said to include the merchandise in this case, we are inclined to the view, as held in effect in *Robinson-Goodman Co.* v. *United States*, 17 C. C. P. A. 149, T. D. 43473, that the Congress, in using this term in paragraph 1529, could not have had its broadest meaning in mind.

There is a claim in these suits, by way of amendment, that the merchandise is dutiable at 40 per centum under paragraph 923 of the Tariff Act of 1930 as manufactures of cotton, not specially provided for. The language of paragraph 912 is clearly more specific than that contained in paragraph 923, and, since the merchandise answers all the requirements of said paragraph 912, it is dutiable thereunder.

After a careful consideration of the entire record, in the light of the applicable authorities, we hold the merchandise represented by item 2215,wherever the same appears on any of the invoices, with or without qualifying words or numerals, not to be a trimming within the meaning of paragraph 1529, but fabrics with fast edges, not exceeding 12 inches in width, in chief value of cotton, not specially provided for, and accordingly dutiable at 35 per centum ad valorem.

To the extent indicated the specified claim in said suits is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.