(C. D. 1944)

Beer Stern Import Corp. *v.* United States

United States Customs Court, Second Division

(Decided December 11, 1957)

*John D. Rode* for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: The suit listed above challenges the action of the collector of customs in classifying certain imported merchandise as cotton trimmings and levying duty thereon at the rate of 45 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T. D. 52739. Plaintiff claims said merchandise to be properly dutiable at 17½ per centum ad valorem under paragraph 912 of the Tariff Act of 1930, as modified by said Torquay protocol, as made effective by T. D. 52820, as fabrics with fast edges, not over 12 inches wide, wholly or in chief value of cotton, and not specially provided for.

At the beginning of the trial, it was agreed between the respective counsel "that the imported merchandise consists of fabrics with fast edges, not over 12 inches wide, wholly or in chief value of cotton, and not garters, suspenders, or braces, and that they are Jacquard woven."

The two paragraphs involved in this case, so far as here pertinent, are as follows:

PAR. 1529. * * * Neck rufflings, flutings, quillings, ruchings, tuckings, trimmings, gimps, and ornaments, 45 per centum ad valorem.

PAR. 912. Fabrics, with fast edges, not over 12 inches wide, and articles made therefrom; garters, suspenders, and braces; all the foregoing, wholly or in chief value of cotton or of cotton and india rubber, and not specially provided for, 17½ per centum ad valorem.

In addition to the stipulation hereinbefore quoted, counsel for the plaintiff offered the testimony of one witness, and counsel for the defendant offered the testimony of two witnesses.

Plaintiff's witness stated that he was president of the plaintiff corporation; that he had been employed by said corporation for 21 years; that said firm has been engaged in the business of importing woven goods, woven ribbons of all types, and straw materials from various countries, including France, West Germany, Switzerland, and Italy, and that his company also handled domestically manufactured items of the same general class; that said company sold its merchandise to jobbers and manufacturers throughout the United States; that it sold to dress manufacturers, underwear manufacturers, children's dresses, all types of dresses and garments, shoe manufacturers, and to the millinery trade.

The witness further testified that he had been in this same line of business for 32 years, in this country and abroad; that he had traveled many times to Europe and had observed the actual manufacture of

the merchandise handled by his firm. He then identified samples of the merchandise in question, and these were marked exhibits 1, 2, 3, and 4, representing items 3815, 3880, 3898, and 3884. He then testified that all the remaining items on the invoice were all of the same type of ribbon, in the same category, but in various colors and designs; that, in their condition, as imported, the items were in running lengths of from 72 to 144 yards and were either wound on big spools or wound on itself. He testified, in substance, that the subject merchandise was produced as follows:

The yarns are gathered for dyeing purposes, according to the number of colors desired; that the colored yarns are then mounted on the looms, according to whether the color is to appear in the figure or in the ground; that the looms have different numbers of shuttles, depending on the number of colors and whether the colors are in the warp or weft.

The witness stated that more than one ribbon is woven at the same time on the loom; that some looms have 48 spaces and can be divided into spaces of from 6 to 12 inches, so that many ribbons of similar type can be produced at the same time; that as the ribbons come off the loom they are completely finished. On this point, the witness was interrogated and testified as follows:

Q. Are they ornamented in any way after they leave the loom?—A. Not at all.

Q. What puts the ornamentation on them in the loom?—A. In the loom the shuttles.

Q. Is it a Jacquard attachment?—A. It's a Jacquard attachment. The Jacquard loom consists of shuttles, and that is the main part of the loom.

The witness also testified that, during his experience, he had continuously bought and sold items such as exhibits 1, 2, 3, and 4 as ribbons; that, during the course of his experience, he had dealt in certain items under the heading of trimmings, a sample of an item which the witness regarded as a trimming being received in evidence as illustrative exhibit 5. This exhibit the witness described as consisting of two different types of material, one being a pleating made from a piqué material and pleated on a pleating machine, and the other being a ribbon; that the pleating is attached to the ribbon by a sewing machine, and the whole thing is called a trimming. Another item, which the witness regarded as a trimming, was received in evidence as illustrative exhibit 6, which consists of a velvet ribbon, on both sides of which is attached rayon loops. The witness stated that this was not a ribbon, but a combination of two different items and called in the trade a trimming.

Regarding the use of the subject merchandise, the witness stated that it was used for various purposes; that it is not dedicated to any one use; that it is used to trim skirts, blouses, dresses; that it is used

on sportswear; that it is used on handbags, undergarments, underwear, as shoulder strappings, on brassieres, for floral arrangements, and for window displays; that it is also used to make buttons, by covering a plain wooden button with the ribbon material; that it is used as apparel belts on women's dresses, by applying it on a stronger backing material; that it is used in shoe bindings, by placing it on top of the shoe, on top of the vamp, as a binding; that he had seen it used for gift wrapping presents and even on earrings.

Q. In their imported condition—I just want to ask this again, Mr. Beer—merchandise like Exhibits 1, 2, 3, and 4 are available or suitable for all of those uses that you mentioned?—A. That's right.

The witness agreed that when items, such as exhibits 1, 2, 3, and 4, were used for the various purposes which he had described, they definitely improve or embellish the appearance of the article on which they are used and that they ornament those articles.

Defendant's first witness was associated with American Fabrics in Bridgeport, Conn., which makes woven trimmings, Jacquard trimmings, and has been director of research for that company for the past 4 years. He had also been associated with Woven Craft, Inc., John Welwood Corp., and Century Ribbon Mills, having been in this general line of business since 1898. He testified that he has personally made cotton trimmings many times and makes them today. Based upon his experience, he stated that, in his opinion, a cotton trimming is an article that is made on a Jacquard loom where each thread is worked as an individual entity; that each individual end can work as such by the design that is put on the cards; that you can make any figure you desire, provided the yarn to be used is suitable.

The witness also stated that he had personally made ribbons; that ribbons are made on what is called a shaft loom; that the number of threads, in particular, with the ribbon, are divided into the number of shafts with which you wish to make it; that, generally speaking, it is made on 5 shafts with an edge of 6, and, if you have 200 ends in the warp, you divide it into 5, which would be 50 ends on each shaft, and that is a ribbon; that you can make a ribbon with 8, 16, or any number of shafts, but you are limited in your design, as your design is limited to the fact that you can only make up to the highest number shaft that you can put on a loom, which is 32. Based upon his experience, the witness stated that, in his opinion, the subject merchandise is Jacquard cotton trimmings; that he has seen articles like these exhibits used many times; and that it is used as an ornamentation on the garment, very often on women's skirts, like the peasant skirts, on blouses, and similar articles, on shoes, and all for ornamentation.

On cross-examination, the witness stated that whether or not a ribbon is a trimming depends upon where you are using it; if you are

ruffling it up, it is a trimming, so that all ribbons are not trimmings; that a seam binding is a type of ribbon that is not a trimming; that he has made bindings that are used on shoes, which is not a trimming; that is used right inside the shoe, but that same ribbon could be used to make a bow, and, if you chose to, you could call it a trimming; that these exhibits are cotton woven Jacquard trimmings, because they are made on a four-shuttle loom; that is a trimming; that a ribbon is made on a single shuttle.

The witness testified, further, that he recognizes such a thing as a Jacquard cotton woven ribbon, and, when asked if that would be represented by the exhibits in this case, stated: "All depends what you want to call it. We make that and call it a trimming"; that it is a ribbon that is used for trimming; that anything that is made on a narrow fabric loom is a ribbon.

Defendant's second witness, also associated with American Fabrics, testified that exhibits 1, 2, 3, and 4 are a narrow fabric, Jacquard woven cotton trimming; that he has seen such merchandise used in the peasant dress trade, where they sew such merchandise around the skirt in either one, two, or more rows; that he had also seen such merchandise used down the front of a man's sport shirt and in girl's play clothes, sport clothes, women's robes, and intimate apparel, and in many other ways; that, when so used, in his opinion, they ornament and embellish the articles on which they were used.

On cross-examination, the witness testified that trimmings are articles used solely to trim; that is their only purpose; that articles like said exhibits can only be used to trim something; that would be their only purpose; that they could not be used for any utilitarian purpose, but then admitted that he would consider a shoulder strapping a useful or utilitarian purpose; that all ribbons are trimmings; that he has seen ribbons which are ornamented as well as plain, and, in his opinion, they are all used for trimming. The witness stated that he distinguished between material used to make trimmings and trimmings, themselves, but gave no testimony regarding such a distinction.

Based upon the record, set out above, counsel for plaintiff contends that the subject merchandise is not trimmings, within the meaning of that term as used by Congress in paragraph 1529, and cites in support thereof various definitions of the terms "ribbons" and "trimmings," and also *Robinson* v. *United States*, 121 Fed. 204; *Sterling Button Co.* v. *United States*, 4 Cust. Ct. 213, C. D. 324; *Robinson-Goodman Co.* v. *United States*, 17 C. C. P. A. (Customs) 149, T. D. 43473; *Sheldon & Co.* v. *United States*, 28 Treas. Dec. 654, T. D. 35332; *Massce & Whitney* v. *United States*, 3 Ct. Cust. Appls. 470, T. D. 33042; *William Openhym & Sons* v. *United States*, 9 Treas. Dec.

274, T. D. 26071; *Kern, Loewi & Mandel* v. *United States,* 10 Treas. Dec. 472, T. D. 26815; *Gartner & Friedenheit* v. *United States,* 131 Fed. 574. In addition to the above, counsel for the plaintiff also relies upon the legislative history of the provisions in question.

Counsel for the defendant cites, as supporting his contention, the *Massce & Whitney* case, *supra;* and *United States* v. *Frankel Importing Co.,* 18 C. C. P. A. (Customs) 188, T. D. 44378. It is also suggested in defendant's brief that, in order to be a ribbon, an article should be made of velvet, satin, or silk, and not of cotton. This contention is based upon the definitions of the terms in question, set out in the brief of counsel for the plaintiff.

Counsel for both parties point out in their respective briefs that the common meaning of the items "ribbons" and "trimmings" is not entirely separate and distinct, but appears to overlap in some particulars.

The record in this case establishes the following facts which are relevant to the issue to be decided:

1. The imported merchandise consists of ribbons.

2. As imported, they were in running lengths of from 72 to 144 yards.

3. They were produced on looms known as narrow ribbon looms, many being produced at the same time.

4. The ribbons are completely finished when they come off the loom and are not ornamented or decorated in any manner after leaving the loom.

5. They are used for many and varied purposes and, as imported, are not dedicated to any one use.

Webster's New International Dictionary defines a "ribbon" as:

1. A fillet or narrow woven fabric of varying widths, having selvage edges, commonly of silk or velvet, used for trimming for badges, etc.

This same authority defines a "trimming" as:

2. That which serves to trim, make complete, ornament, or the like; esp., necessary or ornamental fittings or appendages, as of a garment.

Funk & Wagnall's Practical Standard Dictionary defines a "ribbon" as:

n. 1. A narrow strip of fine stuff, usually silk or satin, having two selvages, and commonly less than 8 inches in width.

This same authority defines a "trimming" as:

n. 1. Something added for ornament or to give a finished appearance or effect.

The Century Dictionary defines a "ribbon" as:

2. A strip of fine stuff, as silk, satin, or velvet, having two selvages.

This same authority defines a "trimming" as:

**3.** Anything used for decoration or finish; an ornamental fitting of any sort; usually in the plural; as, the *trimmings* of a harness or of a hat.

The New English Dictionary defines a "ribbon" as:

A narrow woven band of some fine material, as silk or satin, used to ornament clothing or headgear, or utilized for other purposes.

This same authority defines a "trimming" as:

**2.** *concr.* Adornment, array; *esp.* **a.** Any ornamental addition to the bare fabric of a dress, etc.

The Encyclopaedia Britannica defines "ribbons" as:

**RIBBONS.** By this name are designated narrow webs, commonly of silk or velvet, used primarily for binding and tying in connection with dress, but also applied for innumerable useful, ornamental and symbolical purposes. Along with that of tapes, fringes and other small wares, the manufacture of ribbons forms a special department of the textile industries.

The Columbia Encyclopedia defines "ribbon" as:

**ribbon,** relatively narrow width of woven fabric edged with selvage. Ribbons have been used for centuries as girdles, headdress, badges, and decorations. * * * Ribbon weaving is a special branch of textile manufacture, a modern loom weaving from 2 to 40 webs simultaneously.

The Encyclopedia Americana defines "ribbon" as:

**RIBBON,** a narrow web, generally of silk, used for tying and ornamental purposes. Ribbon-weaving is a special branch of the textile industries.

In *Robinson* v. *United States, supra,* the merchandise consisted of articles, woven wholly of silk, from 4 to 12 inches wide, used directly in these widths, either exclusively or chiefly, for trimming women's hats, bonnets, or other wearing apparel, which were generally known in commerce as chiffon or mousseline bands, or as gauze ribbons, or as gauze bands, and were assessed as trimmings. The merchandise was claimed to be woven fabrics in the piece, of silk, or manufactures of silk, not specially provided for. In holding this merchandise not to be dutiable as trimmings, the Circuit Court for the Southern District of New York, Wheeler, district judge, said:

These articles are not in themselves trimmings, and will not become such until they are made into designs to be applied as trimmings, or are made into trimmings as they are applied to articles being trimmed. That they are used for making trimmings does not make them such. They are not such, within the meaning of the tariff acts, unless they had by usage come to be known by that name, and the evidence taken in this court shows quite clearly that they had not been brought within the meaning of that word. * * *

The decision in *United States* v. *The Harding Co.,* 21 C. C. P. A. (Customs) 307, T. D. 46830, is in harmony with the decision in the *Robinson* case; *supra.* In the *Harding* case, the Court of Customs and Patent Appeals held as follows:

In the case of *United States* v. *Buss & Co.*, 5 Ct. Cust. Appls. 110, T. D. 34138, merchandise, consisting of narrow woven cotton strips in running lengths, with cross marks made in the weaving at short intervals to indicate where the merchandise was to be cut in order to produce "coat hangers", was held to be dutiable as a manufacture of cotton under paragraph 332 of the Tariff Act of 1909, as claimed by the importer, rather than as tapes composed of cotton under paragraph 349 of that act, as assessed by the collector. In so holding, the court, among other things, said:

> The rule expressed by the decisions just cited recognizes the fact that most small articles are not produced as individual or separate products of the loom, but for economy of manufacture are first woven "in the piece." The rule of decision is therefore established that where such articles are imported in the piece and nothing remains to be done except to cut them apart they shall be treated for dutiable purposes as if already cut apart and assessed according to their individual character or identity. This follows, however, *only in case the character or identity of the individual articles is fixed with certainty and in case the woven piece in its entirety is not commercially capable of any other use.* (Italics ours.)

In the case of *Snow's United States Sample Express Co.* v. *United States*, 8 Ct. Cust. Appls., 17, T. D. 37161, it was held that cotton fabrics of various widths, imported in lengths of about 30 yards, adapted, by being cut between printed designs, to be used as bedspreads, curtains, portieres, table spreads, and couch covers, was cotton cloth, printed, rather than articles made from cotton cloth, because, as stated by the court, it was not *"so far advanced that it had an individuality which identified it in its unfinished state as the thing it would be when finished."* [Italics ours.]

In the case of *Rogers* v. *United States*, 14 Ct. Cust. Appls. 51, T. D. 41552, this court applied the rule announced in the cases of *Buss & Co.*, and *Snow's United States Sample Express Co.*, *supra*, and held that woven figured woolen cloth, imported in running lengths ranging from 40 to 50 meters, not marked to indicate where it was to be cut, adapted, when cut between the designs, to be used as backs and seats for chairs, sofas, and davenports, was a mere material to be used for covering the backs and seats of furniture, and was not chair backs or seats. We there said:

> A fabric containing eighteen figures may be cut so as to produce eighteen chair backs, or seats, as the case may be, or it may be cut so as to produce nine sofa backs, or seats, or six davenport backs, or seats. It appears, therefore, that the "identity of the individual article" *is not* "fixed with certainty." The woven fabric may be, and is, commercially used for more than one purpose. * * *

We think it clearly appears from the record in the case at bar that the imported merchandise, although used, when cut into proper lengths and the necessary holes drilled therein, as brake linings for automobiles, is "commercially capable" of various other uses, such as "hoists and winches," clutches, as packing between steel flanges, and as a "dampener or a sound deadener under heavy machinery." Furthermore, it is not marked to indicate where it is to be cut, for the obvious reason that, even when used as brake linings for automobiles, it must be used in various lengths; accordingly, the identity of the individual articles is not fixed with certainty.

In our opinion, the imported merchandise is not parts, finished or unfinished, of automobiles, but a mere material, "commercially capable" of various uses.

But, even if it could be said to be dedicated to the exclusive use of making brake linings for automobiles, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

We must hold, therefore, that the court below reached the wrong conclusion.

In the present case, it may be said that the merchandise consists of narrow woven cotton strips in running lengths of from 72 to 144 yards, but has *no* crossmarks made in the weaving to indicate where it was to be cut, in order to produce trimmings. The character or identity of the individual articles is *not* fixed with certainty, and the woven piece, in its entirety, is commercially capable of many other uses than that of making trimmings. The merchandise is not marked to indicate where it is to be cut, for the obvious reason that, even when used to make trimmings, it must be used in various lengths; accordingly, the identity of the individual articles is not fixed with certainty. But, even if it could be said to be dedicated to the exclusive use of making trimmings, it would be, nevertheless, a mere material for such use, just as silk cloth in the piece, designed to be used as linings for clothing, is a mere material out of which such linings are to be cut.

In the case of *Gartner & Friedenheit* v. *United States, supra,* in discussing the apparent distinction the Congress had made between trimmings and ribbons, the court said:

> * * * It further appears by a comparison of paragraph 339 * * * and paragraph 320 * * * of said act that Congress has made a distinction in the case of cotton goods between trimmings and ribbons. It also appears from the rulings of the Treasury Department that ribbons of the kind in question here have been uniformly held to be dutiable as manufactures of silk.

The distinction between trimmings and ribbons, recognized in the *Gartner* case, *supra,* is fortified by a consideration of the separate provision for these articles in the several tariff acts from 1897 down to and including 1930. In the Tariff Act of 1897, trimmings were *eo nomine* provided for in paragraph 339, while ribbons were provided for by name in paragraph 320. In the Tariff Act of 1909, trimmings were *eo nomine* provided for in paragraph 349, and this paragraph also provided for ribbons by name at the same rate of duty. In the Tariff Act of 1913, trimmings were provided for by name in paragraph 358, and fabrics, with fast edges, were provided for in paragraph 262. In the Tariff Act of 1922, trimmings were *eo nomine* provided for in paragraph 1430 and fabrics, with fast edges, were provided for by name in paragraph 913. In the Tariff Act of 1930, trimmings are *eo nomine* provided for in paragraph 1529 and, in paragraph 912, provision is made for fabrics, with fast edges, not exceeding 12 inches in width, wholly or in chief value of cotton.

In the Summary of Tariff Information, 1929, page 1582, in discussing paragraph 913, it is stated:

Paragraph 913 includes narrow woven fabrics with fast edges which have not been ornamented after leaving the loom * * *.

"Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, and webbings, are made on narrow-ware looms which produce a number of them simultaneously.

At page 2026 of the above publication, appears the following:

* * * Trimmings are narrow goods used to trim or edge garments or upholstery; they may be woven goods, or braid, or lace.

In the Summary of Tariff Information, 1921, the following appears, regarding paragraph 912:

Paragraph 912 includes narrow woven fabrics which have not been ornamented after leaving the loom, manufactures of such narrow woven fabrics, and certain articles made by braiding or twisting together yarns or threads. These "small wares" are confined mainly to those of which cotton is the component material of chief value. Similar small-wares paragraphs are to be found in the other three textile schedules.

"Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, webbings, etc., are made on narrow-ware looms which produce a number of them simultaneously by means of numerous small shuttles positively driven by means of a rack and pinions.

At page 884 of the above publication, appears the following:

Narrow wares ornamented by embroidery or lace are more specifically provided for in paragraph 1430 and it is not necessary to note such exclusion from this or other paragraphs.

On page 1160 of the above publication, appears the following:

There has been inserted a provision for "ribbons ornamented in the process of weaving"; this will include all ribbons other than the plain (plain woven, twilled, or sateen).

Under the heading of "Suggested changes," on this same page, is the following:

* * * It may be noted that the phrase "ribbons ornamented in the process of weaving" causes the inclusion with laces at the lace rate of duty of ribbons woven with a jacquard or other special loom attachment, and leaves under the textile schedules only plain ribbons.

Commenting upon the above, in his brief filed herein, counsel for the plaintiff observes:

It is important to note that, following this comment, the provision in question was deleted by Congress from the proposed Paragraph 1430 in toto thus leaving cotton ribbons which were ornamented in the process of weaving, and which were

not ornamented after leaving the loom, under Paragraph 913 of the Tariff Act of 1922.

The above recited legislative history makes clear the intention of the Congress to make dutiable, under paragraph 912 of the Tariff Act of 1930, ribbons of cotton which were ornamented in the process of weaving, but which were not ornamented after leaving the loom.

Counsel for the defendant cites and quotes from the case of *United States* v. *Frankel Importing Co.*, 18 C. C. P. A. (Customs) 188, T. D. 44378, as supporting his contention that the involved merchandise is trimmings. In that case, the court said:

If the oral testimony alone be considered, we should be inclined to sustain the lower court in its finding that the merchandise involved is not in and of itself a trimming as classified by the collector, but we must also consider, in determining this question, the exhibits placed in evidence upon the trial and now before us.

\* \* \* \* \* \* \*

Appellee, however, offered in evidence a number of exhibits to illustrate the use of the merchandise, and the same were received as collective Exhibit A.

In the record we find the following in the testimony of said Frankel, one of the appellee's witnesses:

Q. Have you certain exhibits which indicate how the merchandise is used?— A. Yes, sir; those are the ones.

Q. This collection which you have here fairly represents the use to which the merchandise is put?—A. Yes, sir.

MR. PUCKHAFER. I offer these in evidence as an illustrative exhibit. \* \* \*

[The same were received in evidence and marked Illustrative Exhibit A of this date.]

\* \* \* \* \* \* \*

This court has repeatedly held that in classification cases the sample is ofttimes a very potent witness. *United States* v. *May Department Stores Co.*, 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *Bernard, Judae & Co.*, 18 C. C. P. A. (Customs) 68, T. D. 44029.

This evidence, we think, was not given due consideration by the court below and, properly considered in connection with all of the oral testimony, its finding that the merchandise involved is not "trimming" is contrary to the weight of the evidence, and the protest should have been overruled.

It is true that samples of the subject merchandise are in evidence in this case, as was also true in the *Frankel* case, *supra*. However, in the *Frankel* case, there was in evidence a number of exhibits illustrating the use of the merchandise in that case. In the present case, we have no samples illustrating the use of the merchandise. It is apparent, from a reading of the decision in the *Frankel* case, that the court, to a large extent, based its opinion upon an examination of the samples illustrating the merchandise when in actual use. Furthermore, no legislative history was referred to or argued by counsel in the *Frankel* case. So far as appears from the decision in the *Frankel* case, no consideration was given to the decisions in the *Buss & Co.* and *Snow's United States Sample Express Co.* cases.

Based upon the record before us and being guided by what we perceive to be a congressional intent to make merchandise such as that here involved dutiable under paragraph 912 of the Tariff Act of 1930, as modified, *supra*, we hold all the merchandise covered by this suit, which was assessed with duty at 45 per centum ad valorem under paragraph 1529 of the Tariff Act of 1930, as modified, *supra*, to be properly dutiable at 17½ per centum ad valorem under paragraph 912 of said act, as modified, *supra*, as alleged by the plaintiff.