(C. D. 1316)

Washington State Liquor Control Board *v.* United States

United States Customs Court, Third Division

(Decided March 22, 1951)

Lawrence, Tuttle & Harper (Frank L. Lawrence, George R. Tuttle, and Walter I. Carpeneti of counsel) for the plaintiff.

David N. Edelstein, Assistant Attorney General (Joseph E. Weil, Chauncey E. Wilowsky, Dorothy C. Bennett, John J. Antus, and William J. Vitale, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

JOHNSON, Judge: The merchandise at issue in this case consists of wine imported from Mexico in glass containers, which was entered at the port of El Paso, Tex., for immediate transportation to the port of Seattle, Wash., but diverted at Seattle, and entered at the port of Tacoma, Wash. At El Paso, the car containing the wine was opened for railway inspection only, and the contents thereof were not checked. Upon arrival at Tacoma, the inspector's report of discharge at destination discloses that 248 jugs were broken and 17 jugs were short, it being noted that the condition of the car and seals was satisfactory but the condition of the packages was poor.

The collector of customs assessed duty upon 5,983 gallons of wine at the rate of $1.25 per gallon, under the provisions of paragraph 804 of the Tariff Act of 1930. He also assessed a duty of 20 per centum ad valorem under the provisions of paragraph 218 (f), by virtue of paragraph 810, upon 5,983 containers, that is, the entire quantity except the 17 containers found to be missing at the time of examination by the discharging inspector. Internal revenue tax was assessed at the appropriate rate upon only 5,735 gallons of wine.

The plaintiff claims that an allowance in duty upon the wine should have been made upon the contents of 248 1-gallon glass containers, found broken at the time of importation because of the consequent loss of the entire contents. Plaintiff further claims that the unbroken containers, assessed at 20 per centum ad valorem, are classifiable as bottles, filled, at ⅙ cent per pound under paragraph 217, as amended by the trade agreement with Mexico, T. D. 50797, and paragraph 810; and that the broken containers, so assessed, are free of duty as of no commercial value, or as a nonimportation, or, if dutiable, they are dutiable under paragraph 1555, as waste. By amendment of the protest, duly filed, it was further claimed that an allowance should

have been made under the provisions of paragraph 813 for breakage, leakage, or damage, and for the resultant loss of spirits or wine.

The pertinent provisions of the tariff law, so far as applicable, are as follows:

PAR. 217. Bottles, vials, jars, ampoules, and covered or uncovered demijohns' and carboys, any of the foregoing, wholly or in chief value of glass, filled or unfilled, not specially provided for, * * * shall be subject to duty as follows: If holding more than one pint, 1 cent per pound; * * * *Provided*, That the terms "bottles," "vials," "jars," "ampoules," "demijohns," and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

[By the trade agreement with Mexico, T. D. 50797, the above-quoted rate of 1 cent per pound was reduced to ½ cent, when such containers were unfilled.]

PAR. 218. (f) Table and kitchen articles and utensils, and all articles of every description not specially provided for, composed wholly or in chief value of glass, blown or partly blown in the mold or otherwise, or colored, cut, engraved, etched, frosted, gilded, ground * * * whether filled or unfilled, or whether their contents be dutiable or free, 60 per centum ad valorem.

PAR. 810. When any article provided for in this schedule is imported in bottles or jugs, duty shall be collected upon the bottles or jugs at one-third the rate provided on the bottles or jugs if imported empty or separately.

Paragraph 813 of the Tariff Act of 1930 in its present amended form is contained in Public Law 612, which we quote:

[PUBLIC LAW 612—80TH CONGRESS]
[CHAPTER 425—2D SESSION]
[H. R. 5965]
AN ACT
To amend paragraph 813 of the Tariff Act of 1930.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That paragraph 813 of schedule 8 of the Tariff Act of 1930 is amended to read as follows:

"PAR. 813. Notwithstanding any other provision of this Act, the duties imposed on beverages in this schedule which are subject also to internal revenue taxes shall be imposed only on the quantities subject to such taxes."

SEC. 2. This amendment shall be effective as to all such merchandise entered, or withdrawn from warehouse, for consumption on or after the day following the date of the enactment of this Act and shall apply also to any such merchandise entered or withdrawn before that day with respect to which the liquidation of the entry or withdrawal, the exaction, or the decision as to dutiable quantity has not become final by reason of section 514, Tariff Act of 1930.

Approved June 8, 1948.

This action was heard and submitted for decision by both sides. Thereafter, a motion to reopen and restore the case to the docket was granted by the court. When again called for trial, counsel for the plaintiff attempted to amend the pleadings by including therein the claim that under paragraph 813. as amended, *supra*, duty should

be assessed upon the same quantity of wines as subjected to the final assessment of internal revenue taxes. Counsel for the Government objected to the motion as untimely under rule 9 (2) of the Rules of the United States Customs Court, in force at the time of hearing, to wit, September 8, 1948. The judge sitting at the trial of the case reserved the disposition of motion for action of the division deciding the issue, allowing briefs to be filed by the opposing parties. Upon consideration thereof the court denied the motion. The case was then restored to the docket for all purposes, and again, after several continuances, came up for trial. Motion was again made to amend the protest by the addition of the same claim contained in the motion previously denied. Counsel for the Government objected to the motion, not upon the ground that it was untimely, but upon the ground that the case had been heard and submitted by both sides. The judge sitting at the trial of the case allowed the motion to be filed, reserving the disposition thereof for action of the division deciding the issue, and granting an exception to counsel for the Government.

On April 25, 1949, new rules were adopted by the United States Customs Court, effective November 1, 1949, rule 6 (c) thereof providing as follows:

(c) *Amendment of pleadings.*—A party may amend his protest, petition, appeal, application for review, or other pleadings or process, at any time by leave of court, and such leave shall be freely given when justice so requires.

Inasmuch as rule 9 (2) of the rules adopted May 29, 1936, and amended as of January 7, 1949, allowing pleading to be amended "at any time before the case is called for trial," had been superseded by rule 6 (c), *supra*, at the time motion of plaintiff to amend was made, the motion is hereby granted.

Two witnesses testified herein on behalf of the plaintiff. Charles H. Sherriff, customhouse broker, testified that he personally supervised all the import entries of the plaintiff and was personally familiar with the date of delivery of the merchandise and the filing of the importer's certificate of breakage. Inasmuch, however, as paragraph 813 of the Tariff Act of 1930 was amended by Public Law 612, which made the amended paragraph retroactive so as to relate to any entry, the liquidation or the decision as to the dutiable quantity of which had not become final by reason of the application of section 514, the testimony of this witness has become immaterial.

Deputy Collector Ogdon testified that the internal revenue tax was assessed upon the basis of 5,735 gallons at the rate of 60 cents per gallon, whereas duty was assessed at the rate of $1.25 per gallon on the basis of 5,983 gallons.

With regard to the claim relating to the classification of containers as glass bottles, it was stipulated and agreed between counsel that the record in protest 128178–K, not yet decided, be incorporated herein

insofar as it pertains to the type of container, the containers in each shipment being of the same character and description. A careful consideration of the incorporated record fails to disclose any testimony tending to establish that the containers are bottles rather than jugs. Nor was there any effort made to establish that the commercial meaning of the term "bottles" was different from the common meaning thereof. The only evidence in that record relating to the classification of the containers was illustrative exhibit 1 thereof, which counsel for both sides agreed was a sample of the glass container. It consists of the ordinary 1-gallon glass cylindrical container with a flat bottom about 20½ inches in circumference. It is slightly over 12 inches high, having a narrow neck approximately 2½ inches long, and attached to the upper portion thereof there is a handle, circular in form, about 1½ inches in height, the hole therein about large enough for the insertion of a finger for carrying.

It is interesting to note that the same deputy collector who testified in the case at bar testified in the incorporated case that two rates were applied to the containers, the 20 per centum rate under paragraph 218 (f), by virtue of paragraph 810, to the containers which were filled with wine and unbroken, and the 60 per centum rate to the broken containers, apparently upon the novel theory that an application for segregation of the broken containers was not filed by the importer.

In the brief of counsel for the plaintiff many definitions of various lexicographers, as well as such as appear in the Code of Federal Regulations and the Regulations of the Federal Alcohol Administration as to the meaning of the term "bottle," are quoted, and it is contended that such definitions show that the 1-gallon containers herein are "bottles" according to the common meaning of "that very common term of universal use." Referring particularly to the definition of "bottle" in Webster's New International Dictionary, it is contended that the expression *"usually * * * without handles"* [italics supplied] appearing therein indicates that sometimes bottles have handles, and that other definitions which counsel quotes in its brief fail to suggest that the presence or absence of handles affects the status of a receptacle as a "bottle." The definition referred to on page 315 of said dictionary provides:

bottle * * * 1. A hollow vessel of glass, earthenware, or the like, usually with a comparatively narrow neck or mouth, and without handles. * * * *Bottle* is now so loosely used that its limit of application is not well defined; it is generally distinguished from such vessels as the *jug* and *demijohn*.

This court is unable to agree with counsel's quotation from the foregoing definition as indicating the proper interpretation thereof. We are of the opinion that a bottle is there described as "A hollow vessel of glass, * * * and without handles" and that the "usually" refers only to "a comparatively narrow neck or mouth."

The Century Dictionary, 1889 ed., vol. 3, p. 3249, defines "jug" as follows:

**jug** \* \* \* **1.** A vessel, usually made of earthenware, metal, or glass, \* \* \* and generally provided with a handle or ear, used for holding and conveying liquors; \* \* \* in the United States, specifically, an earthenware vessel with a swelling or a cylindrical body, a handle, and a narrow neck and orifice, usually stopped by a cork. \* \* \*

The New Century Dictionary, 1946 ed., p. 884, defines a "jug" as follows:

**jug** \* \* \* A vessel in various forms for holding liquids, *commonly* having a handle, *often* a spout or lip, and sometimes a lid; a pitcher; also, a deep vessel, usually of earthenware, with a handle and a narrow neck stopped by a cork. [Italics supplied.]

The Century Dictionary, 1889 ed., vol. 1, p. 638, defines "bottle" as follows:

**bottle** \* \* \* **1.** A hollow mouthed vessel of glass, wood, leather, or other material, for holding and carrying liquids.

It will be noted that the Congress has distinguished between bottles and jugs in paragraph 810, *supra*, in providing that either bottles or jugs should be assessed at only one-third the rate when imported as containers of the beverages provided for under schedule 8. This court is of the opinion that the containers in question come squarely within the definition of "jug," and therefore the filled containers are properly dutiable at one-third the rate of 60 per centum ad valorem under paragraph 218 (f), *supra*, by virtue of paragraph 810, *supra*.

Relative to the claim of plaintiff that the broken containers were erroneously assessed with duty for the reason that being broken they were free of duty as a nonimportation, the Government argues in its brief, although not citing any cases in support thereof, that—

The doctrine of nonimportation of merchandise cannot be invoked where the merchandise was actually imported but in a broken condition.

If the articles had been broken at the time of importation, but capable of being repaired, then, of course, the claim that articles in such broken condition constituted a nonimportation would be untenable. See *Ross Beason* v. *United States*, 6 Cust. Ct. 116, C. D. 443; *Pasquale Perotti* v. *United States*, 26 Cust. Ct. 37, C. D. 1294. Broken containers were held to constitute a nonimportation in the case of *Schenley Import Corp.* v. *United States*, 6 Cust. Ct. 649, Abstract 45900, where 39 bottles of Dubonnet still wine were broken and the contents lost. The court found that the breakage and loss of wine in each case was more than 10 per centum of the value of the contents and it also found that the number of bottles broken was 39 for which no allowance in duties was made; that such breakage was reported by the discharging inspector and verified by the importer in its affidavit.

Upon such facts, the court directed the collector to reliquidate and refund the duties taken upon the 39 bottles as well as the contents.

In the case of *Marshall Field & Co.* v. *United States,* 69 Treas. Dec. 1229, Abstract 33706, protest was filed against the refusal of the collector to grant an allowance in duties for two perfume bottles reported by the appraiser as broken and having no commercial value at the time of examination. The court there cited *Lawder* v. *Stone,* 187 U. S. 281, 47 L. ed. 178, where the Supreme Court held that merchandise, having no commercial value at the time of importation, is not subject to duty, and also *United States* v. *Shallus,* 2 Ct. Cust. Appls. 332, T. D. 32074, where it was held that although duty accrues at the time of crossing the customs line, the amount of merchandise imported, its condition, and, in every respect, its dutiable status, are ascertained as of the time they cross the line by examinations and inspections of their condition at the subsequent time of weighing, gauging, appraising, etc. Upon authority of the cases cited the court held that the two perfume bottles which at the time of importation had no commercial value due to breakage were not subject to duty.

In the case of *In re Dodge & Olcott Company,* 17 Treas. Dec. 45, T. D. 29494, G. A. 6854, 21 demijohns which were shipped as containers of floral waters were broken prior to importation, the contents thereof escaping by leakage. No duty was assessed upon the floral waters but a duty was assessed upon the demijohns which were broken upon the theory that the demijohns were not totally annihilated, but were damaged, and that the broken glass would have some value. The court stated:

In the present case the main importation described on the invoice is floral waters, and the demijohns which were broken were simply used as containers and may properly be regarded as mere incidents of the contents. In one sense they were not the merchandise which the protestants designed to import, nor would they have been imported, probably, as separate articles apart from the contents.

The court instructed the collector to reliquidate the entry upon the basis of a nonimportation of both the demijohns and the contents.

Following the cases cited, it is the holding of this court that the collector erroneously assessed duty upon the 248 broken containers at the rate of 20 per centum ad valorem, and that said containers constituted a nonimportation at the time the shipment arrived in the United States.

Respecting the duty assessed upon the contents of the 248 broken containers, counsel for the plaintiff contends that the provisions of Public Law 612, amending paragraph 813 of the Tariff Act of 1930, causes it to become immaterial whether or not duty should have been assessed upon the quantity of wine landed at the port of Tacoma, rather than at the port of El Paso. *United States* v. *Somerset Importers, Ltd.,* 33 C. C. P. A. 138, C. A. D. 328. Counsel for the

Government agrees that in view of this court's decisions in the cases of *Austin, Nichols & Co., Inc.* v. *United States*, 22 Cust. Ct. 33, C. D. 1155, and *Parrott & Company* v. *United States*, 24 Cust. Ct. 71, C. D. 1210, paragraph 813, as now amended by Public Law 612, is applicable to the wine here at issue. In the foregoing cases it was held that all duties taken upon quantities in excess of the quantities upon which internal revenue taxes were finally assessed should be refunded.

In view of the foregoing agreement of the parties, it is the holding of this court that duty is assessable upon the basis of the quantity upon which internal revenue taxes were finally assessed, which according to the evidence was 5,735 gallons of wine.

Judgment will therefore be entered in favor of the plaintiff to the extent indicated directing the collector to reliquidate the entry, and refund all duties taken upon the wine contained in 248 jugs, as well as all duties assessed upon the broken jugs. In all other respects the protest is overruled.