56 CCPA

The UNITED STATES, Appellant,

v.

OAKVILLE COMPANY, Appellee.

Customs Appeal No. 5292.

United States Court of Customs
and Patent Appeals.

Nov. 14, 1968.

Edwin L. Weisl, Jr., Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Brian S. Goldstein, New York City, for United States.

Brooks & Brooks, New York City (Thomas J. McKenna, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and BALD-WIN, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, 58 Cust.Ct. 562, C.D. 3052 (a modification

on rehearing of 58 Cust.Ct. 79, C.D. 2893).

There is no dispute as to the facts. The Oakville Company is a division of Scovill Manufacturing Company and is located in Oakville, Connecticut. In the course of filling an order from the Monarch Marking System Company, of Dayton, Ohio, for rolls of common pins inserted in paper tape, 5000 pins to the roll, for use in Monarch ticketing machines which attach price tags to garments, Oakville exported to Canada common pins one inch in length together with rolls of one inch wide paper tape, the rolls being 17 or 18 inches in diameter. The pins were exported in bulk in packages of about 45 pounds each, to a Canadian subsidiary, the De Long Hook and Eye Company of Canada, Ltd. A total of 86,569 pounds of pins were exported for this purpose. De Long, by automatic machines to which the pins and paper tape were fed, put two longitudinal parallel ridges in the tape and simultaneously inserted the pins therethrough at accurately spaced, regular intervals. Lengths of this pin-loaded tape, each containing 5000 pins, were wound on wooden cores to which circular cardboard side discs were stapled, the discs bearing labels, and these finished rolls of pins were shipped to Monarch in the United States.

This was a large order, for 117,768 rolls of pins, the three entries here involved covering 9,768 rolls. Oakville made the pins especially to fill this order and did not ship them from open stock. De Long maintained the Oakville-made pins separate from others in its factory. Nothing was done to the pins in Canada except to insert them in the paper tape. The paper tape was modified in Canada by the formation of the two ribs in it and the insertion of the pins therethrough. The charge by De Long to Oakville for forming the ribs in the paper was 6½¢ per roll of 5000 pins and the total cost of producing a roll was 19¢. A finished roll is about 5¾ inches in diameter.

The merchandise was entered at the port of Buffalo, New York, as duty-free under paragraph 1615(a), Tariff Act of 1930, as amended. The collector, however, rejected the duty-free claim and classified the rolls as common pins on rolls under paragraph 350 with duty at 20% ad valorem.

Plaintiff-appellee filed an original and an amended protest claiming the pins were entitled to duty-free entry under paragraph 1615(a) as American goods returned without having been advanced in value or improved in condition; that the paper tape was dutiable under paragraph 1615(g) (1) only to the extent of the alterations performed in Canada on the paper; that the wooden spools were dutiable at 12½ or 16⅔ per centum ad valorem under paragraph 412; and that the cardboard discs were classifiable under paragraph 1413 with duty at 15 per centum ad valorem. By amendment, plaintiff further claimed that the spools, paper tape, and cardboard discs constitute the usual and ordinary containers for the imported pins and, as such, are entitled to duty-free entry. It also claimed that if they are not, then the failure of the appraiser to return *separate* values for *each* of the above components, as well as for the pins, rendered the appraisement and the liquidation null and void.

It was stipulated that the requirements of the customs regulations pertaining to free entry had been complied with.

The statutes with which we are here concerned are:

*Classified under*: Paragraph 350, Tariff Act of 1930, as modified by T.D. 51802:

Pins with solid heads, without ornamentation, including hair, safety, hat, bonnet, and shawl pins; * * all the foregoing not plated with gold or silver, and not commonly known as jewelry:

* * * * *

Other . . . . . 20% ad val.

*Claimed under*: Paragraph 1615, Tariff Act of 1930, as amended by the

Customs Administrative Act of 1938, T.D. 49646:

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

\* \* \* \* \*

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph.

Paragraph 1615(g), as further amended by the Customs Simplification Act of 1954, T.D. 53599:

(g) (1) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition if not within the purview of this subparagraph (g).

(A) If any article of metal (except precious metal) manufactured in the United States or subjected to a process of manufacture in the United States is exported for further processing; and

(B) the exported article as processed outside the United States, or the article which results from the processing outside the United States, as the case may be, is returned to the United States for further processing,

then such article may be returned upon the payment of a duty upon the value of such processing outside the United States at the rate or rates which would apply to such article itself if it were not within the purview of this subparagraph (g).

\* \* \* \* \* \*

(4) For the purposes of this subparagraph (g), the value of repairs, alterations or processing outside the United States shall be considered to be—

(A) the cost to the importer of such repairs, alterations, or processing; or

(B) if no charge is made, the value of such repairs, alterations, or processing,

as set out in the invoice and entry papers. \* \* \*

In the final judgment appealed from, the Customs Court sustained the protest that the pins are duty-free under paragraph 1615(a); sustained the protest that the paper rolls are dutiable only on the value of the alteration under paragraph 1615(g) (1) at the rate which would apply to the article itself in its altered condition if not within the purview of that paragraph; and it held that the liquidation of the entries was void for failure of the appraiser to return separate values on the dutiable and nondutiable items and remanded the matter to a single judge to determine the proper dutiable values under 28 U.S.C. § 2636(d).[1]

The Government is dissatisfied with this disposition of the case and asks that we either (1) reverse and hold the liquidation correct or, (2) if we find paragraph 1615 applicable to the pins and paper tape, direct the District Director of Customs to reliquidate the entries at

---

1. "(d) If upon the hearing of a protest, the court declares an appraisement of merchandise made after the effective date of the Customs Administrative Act of 1938 to have been invalid or void, it shall remand the matter to a single judge who shall determine the proper dutiable value of such merchandise in the manner provided by this chapter. In such proceeding no presumption of correctness shall attach to the invoice or entered values."

20% ad valorem under paragraph 350 and assess duty on the total value of the importations less an amount equal to the value of the constructively segregable American goods returned.

In arguing its first request, reliance is principally placed by appellant on a Customs Court opinion in Winthrop-Stearns, Inc. v. United States, 38 Cust. Ct. 1, C.D. 1835, and other cases cited therein. In that connection, appellant argues that the pins here underwent a manufacturing process in Canada and that what was imported was a different commercial entity from what was exported. In *Winthrop-Stearns*, American-made Mebaroin tablets, a medicine preparation, were sent to Canada in bulk where they were bottled, 100 tablets per bottle, labeled, and the bottles packed in individual cardboard ˙ containers. On return they were assessed with duty as a medicinal preparation derived from a coal-tar product and a protest claiming free entry as American goods returned was overruled. The Customs Court held. that in Canada the tablets had been advanced in value or improved in condition.

The only decision of this court called to our attention in which the merits of such a question were considered is Hallauer v. United States, 40 CCPA 197, C.A.D. 518 (1953),[2] a reappraisement case on apples exported to Canada where they were cleaned, graded, packed and returned to this country packed in 42-pound boxes. The principal question in the case was stated to be *which ones* of several items of cost in the packing process were dutiable as the cost of "alterations" under paragraph 1615(g). The substance of the opinion is reflected in the following paragraph:

While it is literally true, as contended by the importer, that apples went out and apples came back, the undisputed facts show that the articles exported to Canada were ungraded apples covered with a film of insecticide spray residue and transported in boxes of an approximate capacity of

35 pounds, whereas the apples returned were wiped, polished, graded, wrapped, and packed in boxes of Canadian origin each weighing 42 pounds net. We share the view of the court below that those changes were sufficient to convert the exported merchandise from "an apple" or "apples" *per se*, as they were alleged to be by the appellant, into a different unit of merchandise or article of trade and constituted "alterations" within the meaning of paragraph 1615(g), supra, the value thereof being represented by items 1 to 7, inclusive.

Items 1 to 7 were the costs of wiping, transfer from boxes to wiping machines, sorting, box liners and pads, wrappers, wrapping and packing, packing boxes, and labels. Counsel agreed as to the values to be attached to these several items, which in total amounted to 72½¢ per box imported in Canadian dollars. It cannot be disputed that in *Hallauer* things were done to the apples in Canada beyond merely placing them in boxes, whereas here nothing whatever was done to the pins which would alter them or change their condition.

Appellee, in asking affirmance, appears to be satisfied with the final judgment of the Customs Court and with its remand to the single judge for a determination of dutiable *values* on the dutiable and nondutiable *items*. In a brief containing but three pages of argument in addition to the statement of facts and issues, appellee cites but a single case, the decision of the Customs Court in Import Export Service of New Jersey, The Babb Co. v. United States, 37 Cust.Ct. 54, C.D. 1798 (1956), wherein an American-made aircraft engine was shipped to Canada where it was mounted in an airframe of Canadian manufacture. On entering the United States, the complete airplane was subjected to duty as an entirety and duty-free entry of the engine refused by the collector. The Customs Court sustained a protest that the engine was duty-free under para-

---

**2.** Only three judges of this court heard this case.

graph 1615(a) as American goods returned without having been advanced in value or improved in condition.

Judge Richardson of the Customs Court, on the rehearing below when the court modified its judgment herein on petition of the plaintiff, partially agreed to by the Government, wrote a concurring opinion urging the necessity of bearing in mind the distinction between the collector's responsibility under paragraph 1615(a) in ascertaining the *rate* of duty to be applied to imports and the appraiser's responsibility under that statute in ascertaining whether identifiable American components are *exempt* from duty and segregable for *appraisement* purposes. He wished to warn the single judge, on remand, against treating "the items, constructively separated by us, as a single entity * * *." He referred to a case in which, as a single judge, he had taken the position the lower court has taken here in directing a remand and in which he had been reversed by the Appellate Term, John V. Carr & Son, Inc. v. United States, 54 Cust.Ct. 513, R.D. 10902, reversed and remanded, United States v. John V. Carr & Son, Inc., 58 Cust.Ct. 809, A.R.D. 219, a case which we affirmed after the briefs were filed herein, John V. Carr & Son, Inc. v. United States, 396 F.2d 1017, 55 CCPA 111, C.A.D. 942 (decided June 27, 1968). The question there related to an automobile body bailing press consisting of certain power equipment exported from the United States and combined in Canada with superstructure to form the complete imported machine and was whether, for duty purposes, the baling press should be appraised as an entity or whether the American-made parts should be omitted in making that appraisal. We held that the whole baling press was what should be appraised, not just the Canadian-produced superstructure.

Upon review of the foregoing and other authorities and analysis of the facts, we find ourselves partly in agreement with the court below, the appellant, and the appellee—and in partial disagreement with all of them. Under the circumstances, it seems most expeditious simply to state what we believe to be the proper resolution of the issues.

■ We agree with appellant that what was imported was a "different commercial entity" from what was exported from the United States. To avoid confusion, we will hereafter refer to the imported merchandise as "pins-in-rolls," to distinguish this commercial item from common pins per se or pins otherwise packaged.

It is our opinion that the pins-in-rolls must be assessed with duty as an entity in accordance with the reasoning of the *Carr* case. See also, Parrot v. United States, 40 CCPA 8, C.A.D. 490. The lower court distinguished the *Winthrop-Stearns* case on the basis of factual differences. Suffice it to say that we do not consider ourselves bound by it.

■ We agree with the lower court and with appellee that the exported pins are entitled to duty-free entry under paragraph 1615(a). Clearly, they had nothing done to them in Canada to advance their value or improve their condition as pins and they were manufactured in the United States. They returned to the United States unchanged and during handling in Canada were carefully kept track of to maintain their identity as American-made. The principles of the *Carr*, *Parrot*, and *Babb* cases apply.

The court below in its initial opinion held that the paper tape was of American origin and entitled to free entry under paragraph 1615(a) on the principles of the *Babb* case. On rehearing, the court, after hearing contrary arguments by the appellee, inexplicably and inconsistently said that in its first opinion it had "substantially held * * * that certain paper rolls, manufactured in the United States and exported for alteration, were dutiable only on the value of the process which altered the rolls under paragraph 1615(g) (1)." The judgment appealed from so decrees. In doing so, the lower court was not agree-

ing fully with the importer who was insisting, in accordance with its protest, that the paper should be dutiable not only on the value of the "alteration" (forming the ribs at 6½¢ per roll) but at the *rate* for *paper* under paragraph 1413 of the Tariff Act of 1930.

■ On this decision, as it finally came out, we agree with neither appellee nor the Customs Court. We think the court was right the first time when it said the paper tape was entitled to free entry as American goods returned. In our view, paragraph 1615(g) (1) does not apply because the paper tape was not exported "for repairs or alterations." Like the pins, the paper tape was sent to Canada to become a component or element of pins-in-rolls, a new commercial entity manufactured in Canada by De Long Hook & Eye Company. The tape was clearly not "repaired" and we do not think it was exported "for" alterations, notwithstanding it was somewhat altered in having the pins stuck into ribs formed in it. Paragraph 1615(g) (1) refers to an "article" which is exported, that same "article" being returned after being repaired or after having had alterations made in it and then further makes reference to "the article itself in its repaired or altered condition." We think that this contemplates that the article returned is still recognizable as an article in the same category as the article exported and does not contemplate such a situation as that here where the paper tape—the "article" exported— comes back as a mere component of an entirely different article, namely, pins-in-rolls. The pins-in-rolls is an article consisting of several components: a wood core, two cardboard discs held thereto by staples to form a spool, a formed paper ribbon *made from* the exported tape into which pins have been inserted at regular intervals, the pin-carrying ribbon being wound on the spool. This is a far cry from the exported tape. It is in no sense the article exported.

■ The significant fact here is that the pin-carrying paper ribbon is identifiable as having been made from the exported paper tape and as such is American goods returned, within the contemplation of paragraph 1615(a). As to the other requirement that it is not "advanced in value or improved in condition," looking at this problem from the standpoint of commercial reality, as we must, Amity Fabrics, Inc. v. United States, 43 Cust.Ct. 64, 67, C.D. 2104, and cases therein cited, it appears to us that as paper tape the exported material has actually been consumed in making another article—as were the pins—and its value as an article of commerce per se has been destroyed, not advanced. We, therefore, hold the paper tape to be in the same category, duty-wise, as the pins. This appears to have been the initial view of the Customs Court which said in its original opinion: "Accordingly, it is the opinion of this court that the American-made pins herein and the paper tape are entitled to free entry under paragraph 1615(a) * * *." It also appears to be the view of the Government which says in its brief:

> * * * if this Court does not sustain the liquidation of the merchandise at issue, as urged in Point I, supra [full duty with *no* exemption for *any* American goods returned], and agrees with the lower court that paragraph 1615 is applicable, then this Court should direct the reliquidation of the merchandise at issue, pins on rolls, and the assessment of duty at the rate of 20% ad valorem under the provision for common pins as provided for in paragraph 350 supra, on the appraised values less the values found by the Appraiser for constructively segregable American goods returned as shown on the entry papers herein.

And again in the "Conclusion" the brief says:

> * * * should this Court find that the provisions of paragraph 1615 are applicable to the imported common pins and paper tape and they [pins-in-

rolls presumably] therefore are entitled to *partial* exemption from duty, it ·is respectfully submitted that this Court should enter judgment modifying the judgment of the trial court below, directing the District Director of Customs to reliquidate the entries herein at the rate of 20% ad valorem under paragraph 350 supra, and to assess duty on the total values of the importations herein less an amount equal to the value of the constructively segregable American goods returned as shown on the entry papers herein, *and so found by the Appraiser.* [Emphasis ours.]

We are in general agreement with this view as expressed by the Government, as we understand it.

Finally, we have to deal with the lower court's view that the appraisal was void and the consequent referral to a single judge under 28 U.S.C. § 2636 (d). This brings us to the *rate* of duty to be applied to the importation and the manner of its application.

The *rate* applied here was the 20% ad valorem applicable under paragraph 350 to common pins. The "Report of Collector on Protest" is that "The merchandise * * * was classified in liquidation as common pins on rolls, under paragraph 350 * * *." While appellee has pleaded other *classifications* for *components* of the imported pins-in-rolls, none is urged here, none was accepted by the Customs Court, and appellee asks affirmance of the judgment below. We find nothing in the record sufficient to show that the classification was in error and' no proof adequate to show that any other classification is correct. Appellee has not sustained its burden. Actually, the assertions made below that the wooden core should be classified separately under paragraph 412 and the cardboard discs under paragraph 1413 are not before us. The Customs Court did *not* sustain this part of the protest and appellee did not appeal. But if they were, such contentions are contrary to our holding that the imports, pins-in-rolls, are dutiable

as an entity and cannot be split up into their component parts merely because two of those parts are duty-free as American goods returned.

It is to be observed that when the values of the pins and of the tapes are deducted from the value of the pins-in-rolls, the value of the alleged "alteration" to the tape—i. e., the cost of putting the ridges in it—automatically becomes subject to duty because it is included in the value of the imported merchandise and is excluded from the value of the tape as exported, which values the appraiser has found.

For these reasons and because we are assured that the appraiser has already found the value of the imported pins-in-rolls ($1.23 per roll, U. S. $, less 2% cash discount), and the values of the exported pins and paper tape, it would appear that the Government is correct in saying that the collector (or District Director of Customs) has all the information needed to properly liquidate these entries in the manner we hold to be proper, that is, by deducting from the appraised value of the imported pins-in-rolls the appraised values of the pins and paper tape of American origin, and applying the rate dictated by the original classification, which we approve and which has not been shown to be inapplicable.

Under the foregoing circumstances, the lower court's remand to a single judge, as ordered in its second amended judgment, appears to be unnecessary. A basic difficulty in this case appears to have arisen because the court below, on rehearing, became confused as between the imported merchandise, pins-in-rolls, and pins per se and, because it had concluded that pins per se were free of duty, jumped to the erroneous conclusion that pins-in-rolls could not be appraised and liquidated as an entity. It appears to have concluded, erroneously we think, that the appraisement was null and void because the free-of-duty pins per se were appraised "with dutiable items, as a single dutiable entity." We have here a "single dutiable entity,"

pins-in-rolls. Pins per se are necessarily included in appraising this commercial entity; but that does not mean that the appraised value of pins per se, which value is of record (60¢ per roll in the first importation of 2436 rolls at bar), is not *deductable* from the appraised value of pins-in-rolls. If the lower court thought the other components, wood core and cardboard discs, should be separately appraised, we disagree. Their value as part of the pins-in-rolls is not arrived at in that way but by subtracting the values of the American goods returned from the total value. The duty is not payable at the *rates* applicable to wood and cardboard but at the rate for pins.

To the extent that the judgment below is inconsistent with this opinion it is reversed and the case is remanded for further action consistent herewith.

Modified.

WORLEY, C. J., took no part in the decision of this case.