RICHARDSON, Judge: I concur in the result on the authority of *National Silver Co.* v. *United States*, 59 CCPA 185, C.A.D. 1064 (August 17, 1972).

(C.D. 4378)

PISTORINO & CO., INC. *v.* UNITED STATES

94

United States Customs Court, Third Division

(Decided September 21, 1972)

*Siegel, Mandell & Davidson* and *Harold Tompkins* (*Harvey A. Isaacs* of counsel) for the plaintiff.

*Harlington Wood, Jr.,* Assistant Attorney General (*Mollie Strum,* trial attorney), for the defendant.

Before RICHARDSON, LANDIS and NEWMAN, Judges; NEWMAN J., concurring; RICHARDSON, J., dissenting

LANDIS, Judge: This protest involves women's wearing apparel (i.e. jacket fronts) imported from Hong Kong and entered at a total value of $18,340. Plaintiff [1] in its protest has for duty purposes divided the total value of the wearing apparel into component values of (1) $9,588 free of duty under TSUS item 800.00, as American goods returned, and (2) $8,752 dutiable under TSUS item 806.20 at the rate of 42.5 per centum provided for in TSUS item 382.03.

The jacket fronts were appraised as entered. In liquidating the entry for duty purposes, the district director at Boston, Mass. classified the jacket fronts as women's wearing apparel under TSUS item

---

[1] Plaintiff is a customhouse broker and serviced the customs entry for the account of Puritan Dress Company.

382.03 and computed the duty rate, 42.5 per centum ad valorem, on both the $9,588 and $8,752 entered components.

Plaintiff's protest, in the form filed with the district director under section 514 of the Tariff Act of 1930, as amended, 19 U.S.C.A. § 1514, alleges that:

MERCHANDISE IS PROPERLY CLASSIFIABLE AS FOLLOWS:
$9588. TSUS # 800.0080    Free
$8752. TSUS # 382.0386
                   806.2040    42.5%

The district director after reviewing the protest and affirming his original liquidation, transmitted the entry and accompanying papers to this court to resolve the disputed liquidation as provided by law. 19 U.S.C.A. § 1515.

On trial, plaintiff was permitted to amend its protest to alternatively claim "that the American goods are free of duty under item 807.00 TSUS, or item 806.20, TSUS". Defendant did not object to the amendment.

Plaintiff's brief, in argument of this case, makes clear that the claim primarily relied on is the amended claim under TSUS item 807.00. Alternatively, plaintiff has also briefed the claim under TSUS item 800.00. Plaintiff has not cited or referred, in its brief, to the claim under TSUS item 806.20 at the rate provided for in item 382.03. We deem that plaintiff has abandoned its claim under item 806.20 and it is, accordingly, dismissed. *United Metal Goods Mfg. Company* v. *United States*, 46 CCPA 120, 121, C.A.D. 712 (1959). Inasmuch as the entry was liquidated under TSUS item 382.03, plaintiff's claim under TSUS item 382.03 is dismissed.

Schedule 8 of the tariff schedules provides for classification under items 807.00 and 800.00 as follows:

SCHEDULE 8. – SPECIAL CLASSIFICATION PROVISIONS
PART 1. – ARTICLES EXPORTED AND RETURNED

\*       \*       \*       \*       \*       \*       \*

Subpart A. – Articles not Advanced or Improved Abroad

\*       \*       \*       \*       \*       \*       \*

800.00    Products of the United States when re-
          turned after having been exported, with-
          out having been advanced in value or
          improved in condition by any process of
          manufacture or other means while
          abroad _____    Free

\*       \*       \*       \*       \*       \*       \*

Subpart B. – Articles Advanced or Improved Abroad

\*       \*       \*       \*       \*       \*       \*

807.00     Articles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting_____ A duty upon the full value of the imported article, less the cost or value of such products of the United States (see headnote 3 of this subpart)

We conclude that, in the context of the entry, the appraisement; the liquidation; the protest, as filed and amended; and the briefs submitted by both sides, it is conceded that the jacket fronts are properly dutiable under TSUS item 382.03, and that the appraised value of the jacket fronts, $18,340, includes the cost or value of American products valued at $9,588. The only dispute is whether, under TSUS item 382.03, the jacket fronts are dutiable at the full value of the imported jacket fronts as entered and appraised, namely, $18,340, or dutiable at the full value, less the $9,588 cost or value of that part of the jacket fronts as constitutes an American product, under either TSUS item 807.00 or item 800.00.

On trial, plaintiff introduced into evidence four illustrative exhibits. Exhibit 1 is a sample representative of the American fabric in the condition exported; exhibit 2 is a sample representative of the fabric after beads were sewn on; exhibit 3 is a sample of the fabric in the condition imported with beads sewn on, neckline cut and a slit down the middle; exhibit 4 is a sample representative of the imported merchandise after it is made into a completed jacket in the United States, together with matching overblouse and skirt. Mr. Gerald Rosen, president of the Puritan Dress Company, manufacturers of ladies' dresses, testified for plaintiff.

The parties have stipulated that the imported merchandise consists of jacket fronts made in Hong Kong using fabric of United States origin which, in addition to being decorated with beading in Hong

Kong were cut in Hong Kong by approximately an 18-inch slit in the center and having a neckline (U- or V-shaped) cut out; that the documents required by part 10 of the Customs Regulations of the United States, as amended (19 C.F.R.), incident to the free entry of American goods returned were timely filed and that the value of the components, which were the product of the United States is as set forth in the entry, $9,588.00.

There is no dispute as to the following additional facts. Mr. Rosen testified that he was responsible for having the American fabric cut in a pattern in the United States and sent to Hong Kong to have beads sewn on, the neck cut out, and the fabric slit down the front to make a pair of beaded fronts.

The slit in the neck, according to Rosen's testimony, "has to be cut by hand", which was the reason the fabric was sent to Hong Kong in the first place, and that hand work constituted "part of the operation that * * * [Mr. Rosen] was buying." The slit down the middle, Rosen said, is part of the hand operation "that was necessary to make it [the fabric] into a pair of fronts." Exhibit 2 (the fabric beaded, with no neckline) has a small hole punched in the center which Mr. Rosen explained was put there to hook the fabric on a nail so that the fabric could be pulled and held taut in the front while the fabric was beaded.

Rosen further testified that one does not cut the neckline and slit the front of a beaded jacket front until after the fabric is beaded, which is why those operations were not done in the United States prior to shipping the fabric to Hong Kong. The beading on the fabric decoratively sets off the style of the jacket.

On cross-examination, Mr. Rosen testified that his contract for the work in Hong Kong specified beading, cutting the neckline, and slitting the center.

The record, in our opinion, fails to establish that the American fabric or the value thereof, in the imported jacket fronts, is properly free of duty under TSUS item 800.00 or item 807.00 as claimed.

Plaintiff's brief indicates stronger reliance on the claim for free entry of the American exported fabric under TSUS item 807.00 than under item 800.00. TSUS item 800.00 is derived directly from paragraph 1615(a) of the Tariff Act of 1930 which provides for free entry of American goods returned without being advanced in value or improved in condition. TSUS item 807.00, on the other hand, reflects the principle of the "constructive segregation" doctrine (separating, in a single tariff entity, identifiable American components, not advanced in value or improved in condition, from foreign components) that evolved in the case law construing paragraph 1615(a). *United States v. Oakville Company*, 56 CCPA 1, C.A.D. 943, 402 F. 2d 1016 (1968). "It is apparent from a consideration of the legislative history of item

807.00 that the phrase 'in such articles' was intended to solidify the demise of the 'constructive segregation' doctrine which had developed under paragraph 1615(a) of the Tariff Act of 1930." *United States v. Baylis Brothers Co.*, 59 CCPA 9, C.A.D. 1026 (1971). Conceding, therefore, as plaintiff does in its argument under item 807.00, that sewing the beads on the fabrics was an assembly which advanced the fabric in value, it is apparent that if the imported jacket fronts are entitled to any tariff benefit it must be under TSUS item 807.00 which provides for articles assembled abroad of an American product advanced in value by the assembly, and not item 800.00 which provides for American products exported and returned without being advanced in value or improved in condition.

The record establishes that, in the relevant terms of TSUS item 807.00, the imported jacket fronts are articles assembled abroad in part of American fabric the product of the United States; that the fabric was exported from the United States in a condition ready for assembly without further fabrication; and that the physical identity of the fabric was not lost by change in form, shape, or otherwise. *United States v. Baylis Brothers Co., supra.* TSUS item 807.00 also requires, however, that the product of the United States not be advanced in value or improved in condition except by being assembled and except by operations incidental to the assembly process. Beads were sewn on the American fabric in Hong Kong. That was an assembly of components. TSUS item 807.00 logically assumes that a fabricated product of the United States, assembled into an article abroad, has been advanced in value or improved in condition "but limits the extent of the advancement or improvement to that which is brought about solely by the act of assembly"[2] and specifically permits:

> * * * the U.S. component to be advanced or improved "by operations incidental to the assembly process such as cleaning, lubricating, and painting." It is common practice in assembling mechanical components to perform certain incidental operations which cannot always be provided for in advance. For example, in fitting the parts of a machine together, it may be necessary to remove rust; to remove grease, paint, or other preservative coatings; to file off or otherwise remove small amounts of excess material; to add lubricants; or to paint or apply other preservative coatings. It may also be necessary to test and adjust the components. Such operations, if of a minor nature incidental to the assembly process, whether done before, during, or after assembly, would be permitted even though they result in an advance in value of the U.S. components in the article assembled abroad. [H.R. Rep. No. 1728, 88th Cong., 2d Sess. (1964), at p. 46.]

---

Tariff Classification Study, Schedule 8, page 15.

After the beads were sewn on the American fabric, the fabric was hand cut with a U- or V-shaped neckline, and the fabric was slit down the middle, not all the way, but enough to pair the fabric into matching jacket fronts. The substantial question briefed by both sides is whether the cutting, even if it resulted in an advance in value of the American fabric, constituted operations incidental to the assembly process. Mr. Rosen's testimony that the cutting could not be performed prior to the beading, and that the hole in the fabric (at the place where the neckline was cut out after beading) was where the fabric was hooked on a nail and held taut for beading, does not persuade that the cutting was "caused" by or incidental to the assembly as plaintiff contends. For Rosen also testified that the slit in the neck "has to be cut by hand" which is the reason he sent the fabric to Hong Kong in the first place, and the handwork constituted part of the operation that Mr. Rosen bought or bargained for. The fabric without regard to the beads assembled to the fabric, eventually had to be cut with a neckline and slit into paired fronts if it was to be made into jacket fronts.

While a plaintiff need not establish his claims to a moral certainty and beyond reasonable doubt, he must do so upon a preponderance of credible evidence. *A. Millner Co.* v. *United States*, 46 CCPA 97, 100, C.A.D. 706 (1959). The evidence here is credible but does not preponderantly establish, one way or the other, that the cutting was an operation incidental to the assembly process. It may be that, in some general sense, all or part of the cutting operation could be considered "incidental". The law, however, limits the advancement to those operations "incidental to the assembly process". The facts testified to of record do not establish that the cutting operations were incidental to the assembly process. Customs is presumed to have found all the facts necessary to support its classification and duty assessment. *General Methods Corporation* v. *United States*, 59 CCPA 109, C.A.D. 1049 (1972). Plaintiff has failed to rebut the presumption, and the court cannot supply from imagination the essentials in which the proof is deficient. *United States* v. *Malhame & Co.*, 19 CCPA 164, 171, T.D. 45276 (1931).

It follows that the protest is overruled as to the claims under TSUS items 800.00 and 807.00.[3]

---

[3] This case was originally assigned for the writing of the decision to Richardson, J., who was of the view that the cause should be *sua sponte* dismissed for jurisdictional reasons for failure to plead a justiciable claim. However, Landis and Newman, JJ., were of the view that plaintiff's protest pursuant to section 514, Tariff Act of 1930, was properly before the court and deserving of a decision on the merits. The case was thereupon reassigned to Landis, J., for the writing of the decision.

The dissenting opinion of Richardson, J., *sua sponte* raises the point that based on the documentation in the official entry papers "the protest claim for the returned American material * * * reflects such material in an *improved* or *advanced* condition" and that

CONCURRING OPINION

NEWMAN, Judge: I concur with the views of Judge Landis respecting the merits, but wish to comment briefly concerning the jurisdictional question raised *sua sponte*, by my learned colleague, Judge Richardson.

The dissenting opinion points out that there are several statements made by the importer in the official documents before the court which

the claim under TSUS item 800.00 is jurisdictionally defective and not justiciable because TSUS item 800.00 "governs the classification of returned American goods in an *unimproved or unadvanced condition*."

The $9,588 figure mentioned in the protest unquestionably identifies the part of the women's wearing apparel (i.e. jacket fronts) claimed to be free of duty under TSUS item 800.00 as products of the United States when returned "after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad". Beyond that, the entry documentation does not establish, one way or the other, what the $9,588 figure is intended to reflect other than it is the value of the "American material" claimed to be free of duty. However, assuming the entry documentation does reflect the "American material" in an improved or advanced state, statements contained in invoices and accompanying entry papers have been held not to preclude a party from showing what the merchandise really is. *United States* v. *Mercantil Distribuidora, S.A., Joseph H. Brown*, 43 CCPA 111, 116, 117, C.A.D. 617 (1956) (entry describing the meat as cured beef did not preclude party from showing that the meat was not cured beef).

It is apparent from the facts and circumstances of this case that the district director well understood that plaintiff's protest identifying the figure of $9,588 with TSUS item 800.0080 "Free" was intended to claim that the jacket fronts included products of the United States of a value of $9,588 returned after having been exported without having been advanced in value or improved in condition by any process of manufacture or otherwise while abroad, free of duty, under TSUS item 800.00. Under the entry circumstances here summarized, a protest claim should not be preempted by statements in the official papers, cf. *United States* v. *John Barr*, 32 CCPA 16, 19, 20, C.A.D. 279 (1944).

When the collector (now district director) appears to have understood the claim made by a plaintiff, and the government does not move to dismiss the protest on the ground that it is insufficient, this court has been inclined to accept the protest as sufficient. *Lustre Fibers, Inc.* v. *United States*, 31 Cust. Ct. 318, 319, Abstract 57663 (1953).

On trial, plaintiff was permitted to amend its protest to alternatively claim "that the American goods are free of duty under item 807.00 TSUS, or item 806.20, TSUS". Defendant did not object to the amendment. TSUS item 807.00 classifies imported "[a]rticles assembled abroad in whole or in part of fabricated components, the product of the United States, which (a) were exported in condition ready for assembly without further fabrication, (b) have not lost their physical identity in such articles by change in form, shape, or otherwise, and (c) have not been advanced in value or improved in condition abroad except by being assembled and except by operations incidental to the assembly process such as cleaning, lubricating, and painting". TSUS item 806.20 classifies "[a]rticles exported for repairs or alterations" and returned to the United States.

In *Carson M. Simon & Co.* v. *United States*, 55 Cust. Ct. 103, 107, C.D. 2558 (1965), the rule on amendment of a protest was discussed as follows:

It is well settled that a protest may be amended to include a new claim as to merchandise covered by the original protest. *United States* v. *Weigert-Dagen et al.*, 39 CCPA 58, 61, C.A.D. 464. The rules of this court provide that a party may amend his protest at any time by leave of the court and that such leave shall be freely given when justice so requires. (Rules of the United States Customs Court, rule 6(c).) Under this rule, a motion may be granted allowing an amendment when a case is called for trial. *Washington State Liquor Control Board* v. *United States*, 26 Cust. Ct. 147, C.D. 1316; *Shell Oil Co., Inc., et al.* v. *United States*, 32 Cust. Ct. 438, Abstract 57957; *Atlas Trading Co.* v. *United States*, 35 Cust. Ct. 146, C.D. 1736.

It was further stated in *Simon:*

The protest here could have been amended at the trial and might well have been, had plaintiff's attention been called to the alleged defect. Concededly, the court had jurisdiction. Counsel stated the claim in open court and presented proof in support thereof, without any objection being made by counsel for the Government. That issue has been raised for the first time in the Government's brief. Under these circumstances, we find that the objection, even if valid if timely made, was, in fact, not seasonably

are inconsistent with plaintiff's original claim under item 800.00 of the Tariff Schedules of the United States. These statements indicate that the returned American goods were not in an unimproved and unadvanced state as required by item 800.00, TSUS. Because of such inconsistency, Judge Richardson reasoned that the protest presents no justiciable issue, and consequently that the court lacks jurisdiction. I agree that there is an inconsistency between certain statements made by the importer in the official documents and the claim in the protest under item 800.00. But I must disagree that the court lacks jurisdiction.

The inconsistent statements in the official papers merely constitute admissions against interest. Hence, plaintiff was entitled to an opportunity to contradict or explain such admissions at a hearing on the merits. See *Wo Kee & Co.* v. *United States*, 21 CCPA 366, 370, T.D. 46890 (1934) ; *United States* v. *Wo Kee & Co.*, 21 CCPA 341, 344, T.D. 46880 (1934) ; *Lee & Co.* v. *United States*, 15 Ct. Cust. Appls. 202, 204, T.D. 42236 (1927) ; *Schmitt* v. *United States*, 5 Ct. Cust. Appls. 312, 314, T.D. 34523 (1914) ; *United States* v. *Rockhill & Vietor et al.*, 10 Ct. Cust. Appls. 112, 116–117, T.D. 38374 (1920) ; *Mercantil Distribuidora, S.A.* v. *United States*, 33 Cust. Ct. 158, C.D. 1648 (1954), aff'd, 43 CCPA 111, C.A.D. 617 (1956) ; and *Sterling Button Co.* v. *United States*, 4 Cust. Ct. 213, 216, C.D. 324 (1940). None of the decisions discussed in the dissenting opinion persuade me that a case should

made, and that submission of the case on its merits constituted an implied waiver of the defects, if any, in the protest. *Shell Oil Co.* v. *United States*, 54 Cust. Ct. 64, C.D. 2509 ; *Langfelder, Homma & Hayward, Inc.* v. *United States*, 2 Cust. Ct. 525, Abstract 40344.

The case of *National Carloading Corporation* v. *United States*, 44 Cust. Ct. 493, Abstract 64258 (1960), quoted from in the dissent of Richardson, J., is inapplicable to the facts of the case at bar, for it appears in that case that no valid protest was therein filed within sixty days after liquidation. It further appears that salient portions of the court's opinion were omitted from the quotation after the citation *Greeley's Administrator* v. *Burgess* (*Converse* v. *Burgess*), 59 U.S. 413, viz :

\* \* \* If it [the protest] fairly and accurately apprises the collector of the objection which is raised against his action, so that he may have an opportunity to reconsider, a protest is legally sufficient. *Arthur* v. *Morgan*, 112 U.S. 495.
\* \* \* A protest which indicates to an intelligent man the ground of the importer's objection to the duty levied upon the articles should not be discarded because of the brevity with which the objection is stated. [*Schell's Executors* v. *Fauché*, 138 U.S. 562.]

Similarly the case of *Sweeney & Johnson* v. *United States*, 61 Treas. Dec. 1331, 1334, T.D. 45772 (1932), is not applicable to the facts here as it involved an attempted amendment to a protest to *include merchandise not covered by the original protest*, the decision by Judge Kincheloe stating :

\* \* \* *We therefore hold such second amendments invalid* and void in so far as they relate to rugs assessed at 40 per centum ad valorem, and the stipulation entered into between counsel herein with reference thereto, and hereinbefore quoted, will of course have to be disregarded *as relating to merchandise not covered by the protests*, and therefore not within the jurisdiction of this court to pass upon. [Emphasis added.]

Contrary to the dissenting opinion, the claim under TSUS item 807.00 was a proper amendment of the original protest in this case, which claimed that the merchandise of the value of $9,588 was free of duty under TSUS item 800.00.

be dismissed for lack of jurisdiction because there are admissions in the official papers that contradict the claim made in the protest.

In view of the foregoing, plaintiff's initial claim under item 800.00 presents a justiciable issue over which the court has jurisdiction. Accordingly, I am of the opinion that the trial judge properly granted plaintiff's motion to amend the protest.

### DISSENTING OPINION

RICHARDSON, Judge: In view of the unorthodox description of merchandise set forth in the original protest filed by the plaintiff-consignee-broker (expressed in terms of stated values rather than in terms of the conventional identification of articles), compounded by statements appearing in the official papers to which the court must turn for intelligent understanding of the protest claims,[1] a jurisdictional question arising from the face of the pleading is presented to the court at the outset. It seems clear that the $9,588 figure mentioned in the protest relates to the returned American materials. However, the jurisdictional question arises from the *condition* of the returned material as manifested in the protest *vis-à-vis* the item 800.00 protest claim under subpart A of part 1 of schedule 8 of TSUS which is contemplative exclusively of free entry of returned American goods in an *unimproved* or *unadvanced condition.*

The $9,588 protest figure is shown on two documents comprising part of the official papers before the court which indicate it is inconsistent with goods in an *unimproved* or *unadvanced condition.* First, this figure constitutes the *entered value* set forth in plaintiff's entry for the returned material, which describes the material as "RETURNED TO THE U.S. AFTER EXPORT FOR ALTERATIONS". And secondly, this figure is shown in the declaration signed by plaintiff-protestant on Customs Form 3311 for "FREE ENTRY OF RETURNED AMERICAN PRODUCTS" wherein the printed language certifying *that the goods have not been advanced in value or improved in condition* has been deleted. Additionally, an accompanying application for and certificate of registration of articles to be exported for repairs or alterations, on Customs Form 4455 dated April 1, 1966, states that the returned material was sent abroad "To BE BEADED AND CUT IN HALF AND RETURNED". And lastly, figures noted in blue ink on two commercial invoices, dated Hong Kong 7th June, 1966, opposite the specifications of the returned material and adding up to $9,587.99 is said, *via* a penciled notation appearing on one of the invoices, to reflect U.S. value as of "6/1/66".

The foregoing documentation in the official papers to which the protest claim for the returned American material has reference re-

---

[1] Unless reference may be had by the court to the official papers for the purpose of ascertaining the pleader's intentions as expressed in the protest, there is no way to reach even the generous conclusion that the protest is factually sufficient on its face.

flects such material in an *improved* or *advanced condition*. This being the case here, a claim in the protest for classification of such material under item 800.00 would not be justiciable as a matter of law, since, as previously indicated, that tariff provision only governs the classification of returned American goods in an *unimproved* or *unadvanced condition*. And claims which are unjusticiable when pleaded cannot support amendments which purport to make them justiciable after the statute of limitations has run.

As Judge Rao, speaking for an unanimous second division in *National Carloading Corporation* v. *United States*, 44 Cust. Ct. 493, Abs. 64258 (1960), said:

> The right of an importer to protest a liquidation of imported merchandise is statutory. Section 514 of the Tariff Act of 1930 is the enabling provision. It specifies the time for filing a protest, to wit, within 60 days after liquidation, and the substance thereof, to wit, that it shall be in writing, "*setting forth distinctly and specifically*, and in respect to each entry, payment, claim, decision, or refusal, *the reasons for* the objection thereto."
>
> It has been said of a protest that it need not be made with technical precision, but it is sufficient "if the importer indicates distinctly and definitely the source of his complaint, and his design to make it the foundation for a claim against the government." *Greeley's Administrator* v. *Burgess (Converse v. Burgess)*, 59 U.S. 413. . . .
>
>     \*      \*      \*      \*      \*      \*      \*
>
> . . . [I]t is also settled law that *a protest must point out or suggest the provision of law which it is claimed controls the classification* of the subject merchandise and the assessment of duty thereon. *Hermann* v. *Robertson*, 152 U.S. 521. . . . [Emphasis added.]

The second division in the *National Carloading Corporation* case determined that the protest did not state a cause of action, and as such, the court never acquired jurisdiction of the controversy, and the lack of jurisdiction could not be cured by an amendment of a defective protest. It concluded by stating:

> The jurisdictional defect inherent in these proceedings has not been raised by counsel for the Government, whether through oversight, or as an intentional, though necessarily ineffective, waiver, we have no means of knowing. However, the court possesses authority *sua sponte* to dismiss a protest which fails to confer jurisdiction. *U. Fujita & Co. et al.* v. *United States*, 26 C.C.P.A. (Customs) 63, T.D. 49611. We are constrained to exercise that authority in this instance. Plaintiff's motion to amend is, therefore, denied, and the protest is dismissed for insufficiency.

See also, *Eaton Manufacturing Co. et al.* v. *United States*, 66 Cust. Ct. 293, C.D. 4207 (1971), appeals pending; *J. R. Press Corporation* v. *United States*, 45 Cust. Ct. 382, Abs. 64924 (1960); and *Heemsoth*

*Kerner Corporation* v. *United States*, 31 Cust. Ct. 113, C.D. 1554 (1953).

The initial protest claim herein respecting the returned American material does not confer jurisdiction upon the court, and an attempt to amend such a protest by claiming under subpart B of part 1 of schedule 8 of TSUS, namely, items 806.20 and 807.00 which contemplate only returned American goods in an *improved* or *advanced condition* cannot be successful.

Consequently, even though amendment of the protest was made and granted at the trial on circuit, such an amendment is not effective unless and until approved by the division of the court to which the case is assigned for determination. For the reasons stated I would deny the motion to amend the protest, the power to dispose of motions made on circuit reposing ultimately in this division in this protest case. See Rules 6 (c), (d) and (f), Customs Court Rules, adopted April 25, 1949, as amended and in effect on July 1, 1968; and see also, *L. Sandoz Vuille, Inc.* v. *United States*, 65 Treas. Dec. 159, 161, T.D. 46875 (1934), *aff'd*, 22 CCPA 303, 307, T.D. 47349 (1934), and *Sweeney & Johnson* v. *United States*, 61 Treas. Dec. 1331, T.D. 45772 (1932). As the court said in *Sweeney* (page 1334):

> . . . The attempt on the part of plaintiff's in their second amendments to enlarge upon their original protests was, in our view, clearly without warrant of law and a manifest jurisdictional defect on the face thereof that can not be waived by the attorney for the Government or by this court, or by a judge thereof. . . .

I say as much here with respect to the instant protest.

It appears that the returned material constitutes the only real basis for the instant litigation, although two distinct claims are stated in the protest—one relating to the material, and the other to the beads and labor. In colloquy between counsel at the trial, plaintiff's counsel said (R. 4):

> MR. ISAACS: . . . The original claim in the protest is for a specific value of merchandise, $9,588.00, under Item 800.00, TSUS, which is American goods returned. The balance of the value on the protest, as set forth, claims classification under the dutiable provision of item 382.0386.
>
> In other words, the broker filed this protest, and what he did was—In the protest he said, $9,588.00 worth of value we claim to be American goods returned under Item 800.00. The balance, $8,752.00, he claimed as assessed. So that that claim as to the $8,752.00 is really surplusage in the protest. . . .

And nothing that later transpired in the case contradicts this assertion on the part of plaintiff's counsel. No evidence was adduced in support of any claim identified in terms of the $8,752 figure in the protest, nor

was any argument advanced in support of such claim in plaintiff's brief. So that, while plaintiff did not expressly abandon this claim, it has in effect abandoned the claim.

Therefore, it follows from the foregoing that the protest herein must be dismissed—as to the returned American material for the failure of the protest to plead a justiciable claim, and as to the remaining protest claim by abandonment of the same.

I would dismiss the protest.