The CARRINGTON CO. and United Geophysical Corp., Plaintiffs,

v.

The UNITED STATES, Defendant.

C.D. 4415.

United States Customs Court.

March 23, 1973.

————◆————

Glad, Tuttle & White, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiffs.

Harlington Wood, Jr., Asst. Atty. Gen. (Robert Blanc and Andrew P. Vance, New York City, trial attorneys), for defendant.

RAO, Judge:

These actions, consolidated at the trial, involve Flextrack-Nodwell tracked motor vehicles imported with Mayhew drills, in assembled or unassembled condition. In Court No. 70/55515 the drill was not physically attached to the tracked vehicles but was shipped on the same flatbed truck and was mounted on the vehicle immediately after importation. The drills in Court No. 70/55516 were mounted on the tracked vehicles prior to importation. The tracked vehicles *per se* were manufactured in Canada by Flextrack-Nodwell, Ltd., and, except as to the one in Court No. 70/55515, were assembled there with the Mayhew drills. The merchandise was entered at the port of Anchorage, Alaska on various dates during 1968 and 1969 and was assessed with duty under item 692.16, Tariff Schedules of the United States, as modified by T.D. 68–9, Presidential Proclamation No. 3822, as motor vehicles specially constructed and equipped to perform special services or functions, other than fire engines, at 8 per centum or 9 per centum ad valorem, depending on the date of entry. Free entry was granted to the drill portions under item 800.00, as American goods returned, or under item 807.00, as American goods assembled abroad with the motor vehicles without having been advanced in value or improved in condition.

One of the entries, X–039, included one Flextrack-Nodwell vehicle which was entered without a drill. The other tracked vehicle was erroneously designated as RN75, but was in fact the same model as the others. It appears from the official papers that the tracked vehicle without a drill was granted free entry under item 692.11, *infra*.

Plaintiffs claim that the Flextrack-Nodwell motor vehicles are Canadian articles, as that term is defined by general headnote 3(d)(ii), Tariff Schedules of the United States, as amended by Public Law 89–283, and that they are entitled to free entry under one of the fol-

lowing items, as amended: Item 692.03, as automobile trucks valued at $1000 or more; item 692.11, as motor vehicles for the transportation of persons or articles other than automobile trucks valued at $1000 or more or buses; item 692.21, as chassis and bodies (including cabs) for automobile trucks; item 692.23, as chassis and bodies (including cabs) for motor vehicles for the transportation of persons.

The pertinent provisions of the tariff schedules, as amended, are as follows:

General headnote 3(d)(ii):

3. *Rates of Duty.*

    (d) *Products of Canada.*

    \*    \*    \*    \*    \*    \*

    (ii) The term "Canadian article", as used in the schedules, means an article which is the product of Canada, but does not include any article produced with the use of materials imported into Canada which are products of any foreign country (except materials produced within the customs territory of the United States), if the aggregate value of such imported materials when landed at the Canadian port of entry (that is, the actual purchase price, or if not purchased, the export value, of such materials, plus, if not included therein, the cost of transporting such materials to Canada but exclusive of any landing cost and Canadian duty) was—

    (A) with regard to any motor vehicle or automobile truck tractor entered on or before December 31, 1967, more than 60 percent of the appraised value of the article imported into the customs territory of the United States; and

    (B) with regard to any other article (including any motor vehicle or automobile truck tractor entered after December 31, 1967), more than 50 percent of the appraised value of the article imported into the customs territory of the United States.

Schedule 6, Part 6, Subpart B:

| Item | Articles | Rates of Duty |
|---|---|---|
| | | [1968–69] |
| | Motor vehicles (except motorcycles) for the transport of persons or articles: | |
| | Automobile trucks valued at $1,000 or more, * * *: | |
| 692.02 | Automobile trucks .......................... | * * * |
| 692.03 | If Canadian article, but not including any three-wheeled vehicle, or trailer accompanying an automobile truck tractor (see general headnote 3(d)) .................... | Free |
| | * * * * * * * | |
| 692.10 | Other .................................. | * * * |
| 692.11 | If Canadian article, but not including any three-wheeled vehicle (see general headnote 3(d)) ................................ | Free |
| | Motor vehicles specially constructed and equipped to perform special services or functions, such as, but not limited to, fire engines, mobile cranes, wreckers, concrete mixers, and mobile clinics: | |
| 692.14 | Fire engines ........................... | * * * |
| 692.16 | Other ................................. | 9% ad val. [8% ad val.] |
| | Chassis, bodies (including cabs), and parts of the foregoing motor vehicles: | |
| | Bodies (including cabs) and chassis: | |
| 692.20 | For automobile trucks * * * ........... | * * * |
| 692.21 | Chassis, if Canadian article, except chassis for an electric trolley bus, or a three-wheeled vehicle; bodies (including cabs), if Canadian article * * * ........... | Free |
| 692.22 | Other .................................. | * * * |
| 692.23 | Chassis, if Canadian article, except chassis designed primarily for a vehicle described in item 692.14 or 692.16, or for a three-wheeled vehicle; bodies (including cabs), if Canadian article * * * ........... | Free |

———◆———

In support of its contentions, plaintiffs called Robert Baum, assistant branch manager for the Carrington Co. of Anchorage, Alaska; Gary L. Butcher, equipment supervisor for United Geophysical Corp., and Mrs. Avon Dickeson, senior import specialist for the Anchorage district. Defendant also

called Mrs. Dickeson as a witness. An illustration of the imported vehicles and a number of documents were received in evidence.

The business of the Carrington Co. (one of the plaintiffs) is to sell equipment and trucks, such as paving machines, crushing equipment, drills, trucks, tractors, and tracked vehicles in the State of Alaska. United Geophysical Corp. (the other plaintiff) is engaged in seismic contracting primarily in the exploration for oil in all parts of the world. Mr. Butcher's area office operates in Alaska.

According to the record, the tracked vehicle with the drill mounted thereon is used in seismic prospecting for oil for the drilling of shot holes. The drill is used while mounted on the vehicle as the latter is the power source for the drill. Mayhew drills could be mounted on trucks, using the truck engine as the power source, and are so used in the 48 contiguous states. They are mounted on Flextrack tracked vehicles for use in Alaska, however, because such vehicles can operate in areas where trucks cannot due to the soft conditions of the ground or the depth of snow. The Flextrack vehicle has wide tracks which give it the ability to climb over and through snow and carry weight with a minimum amount of flotation for ground bearing pressure. It is also equipped with front idlers and walking beam stops to prevent the walking beam from riding up and down in a vertical position too far. The Mayherv drill cannot be used without a vehicle because it has no power source of its own.

In order to mount the Mayhew drill on the Flextrack tracked vehicle, a supporting sub-frame is made for the drill and this sub-frame is bolted to the rear frame of the Flextrack. The sub-frame must be made because the Flextrack frame is slightly narrower than a truck frame. To remove the drill the bolts are unsecured and the drill with its sub-frame lifted off.

The Flextrack vehicle, *per se*, consisting of a cab and chassis, is used for other purposes, such as transporting steel cargo, gravel, and poles for telephone power wires. Mobile drills have been mounted on them for soil exploration and highway drills for drilling holes for telephone and power poles. They are used to carry work crews and cargo. Mr. Butcher has seen them used primarily in geophysical work, but stated that the first ones were used by the U. S. Army as troop carriers and since then electrical outfits, pole light contractors, and industries doing off-the-road work have used them. When his firm has a working seismic crew, 15 to 18 Flextracks are used. Four to six will have a drill mounted thereon. The remainder will be used to carry beds, recording instruments, wire or personnel.

The tracked vehicle does not have to be altered for these various uses. All that has to be done is to bolt on a flat bed or the equipment desired. Since the tracked vehicles are expensive, purchasers use them for more than one purpose. Mr. Butcher said, for example, that the reason that the drill frame rather than the Flextrack frame is modified, is because his firm uses the Flextrack for several purposes and does not want to commit a given Flextrack to a special use.

Mr. Baum did not consider the tracked vehicle to be specially constructed because it was not limited in its use. Mr. Butcher said it was not specially built for any piece of equipment, but that it was more flexible than a truck due to the fact that it has more flotation and ability to get around without a roadway. He said, however, that the imported units are used specifically for drilling.

It is not unusual for a Flextrack vehicle and a drill to come in unattached. The ones covered by Court No. 70/55515 were unattached because the shipment of the drill came at the very last minute and there was no time for anyone to attach it. Those covered by Court No. 70/55516 were attached because Mr. Butcher's shop in Alaska was pressed for time and the Canadian shop was not.

Collective exhibit 1 consists of certificates of the manufacturer stating that the tracked vehicles are of Canadian origin and that any foreign material, other than United States material, would not exceed 20 percent of the final appraised value. Collective exhibit 3 includes defendant's response to a request for admissions, stating that the customs service at Alaska had admitted Flextrack vehicles free of duty under item 692.11 when they were, in their condition as imported, personnel carriers or cargo carriers, and were Canadian articles, as defined in general headnote 3(d)(ii), *supra*.

Mrs. Dickeson testified that certificates such as collective exhibit 1 are ordinarily used by her office without further validation to indicate that the parts which make up the tracked vehicles contain Canadian material in excess of 50 percent, so that they could qualify under the Canadian Automotive Products Trade Act. However, where the classification is not predicated on that Act, there would be no reason for using such a certificate.

The question at issue is not whether the Flextrack tracked vehicle *per se* is entitled to free entry as a Canadian article, but whether the imported unit, consisting of the Flextrack tracked vehicle and the Mayhew drill, in attached or in unassembled condition,[1] was properly classified under item 692.16, as motor vehicles specially constructed and equipped to perform special services or functions, such as, but not limited to, fire engines, mobile cranes, wreckers, concrete mixers, and mobile clinics.

Plaintiffs claim that the imported merchandise is not so classifiable on the ground that the tracked vehicle is not specially *constructed* to perform special services or functions, even though as imported it was equipped to do so. Plaintiffs argue that the terms "specially constructed" and "equipped" are conjunctive and that a motor vehicle must be both specially constructed and specially equipped in order to fall within the provision. What plaintiffs appear to be claiming is that the motor vehicle portion itself must be specially constructed and that it is not sufficient if the imported unit is so constructed. In the instant case, the Mayhew drill was mounted on the Flextrack tracked vehicle in order to perform special services in connection with oil exploration in Alaska where the ground was soft and the snow deep. When assembled, the unit was specially constructed and equipped to perform the function required of it. The degree of special construction is not controlling. See Volkswagen of America, Inc. v. United States, 68 Cust.Ct. 190, C. D. 4358, 343 F.Supp. 1394 (1972), appeals pending, where the court said:

> * * * As the draftsmen of TSUS noted with respect to this statute, the item covers "motor vehicles specially constructed and equipped to perform special services or functions." Thus, the exemplars in that statute are at best directory only, with the remaining language of the statute being determinative of its outer limits. And we find nothing in the language of the statute or in its legislative history indicative of a limitation on classification in terms of the *degree* of special construction and equipment of imported motor vehicles sought to be classified thereunder. [Emphasis quoted.]

No question of entireties is present here since the statutory language indicates that the vehicles covered by item 692.16 are to be classified as entireties. United States v. Glück & Sons et al., 8 Ct.Cust.Appls. 11, T.D. 37160 (1917); C & M Srery Co. v. United States, 57 Cust.Ct. 263, C.D. 2779 (1966); United States v. Mannesmann-Meer, Inc., 54 CCPA 24, C.A.D. 897 (1966); United States v. Standard Brands Paint Co., 58 CCPA 115, C.A.D. 1014, 436 F.2d 1044 (1971). The fact that the drill portion

---

1. Under General Interpretative Rule 10 (h), Tariff Schedules of the United States, unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled.

was admitted free of duty as American goods returned or American goods assembled abroad with the motor vehicle portion does not establish that the imported unit is not an entity or that it can be split up into its component parts for classification purposes. Donald G. Parrot v. United States, 40 CCPA 8, C.A.D. 490 (1952); United States v. Oakville Company, 56 CCPA 1, C.A.D. 943, 402 F. 2d 1016 (1968).

Plaintiffs claim, however, that the exemplars in the superior heading to item 692.16 do not have interchangeable chassis; that each chassis is specially constructed for a specific purpose, and that therefore the Flextrack-Mayhew unit does not fall within the heading. No evidence has been presented to support this view nor is it, as plaintiffs contend, a matter of common knowledge that the chassis of all the exemplars are specially constructed for a specific purpose and could not be used otherwise. The contrary appears from the legislative history.

According to the Tariff Classification Study of November 15, 1960, the "Nomenclature for the Classification of Goods in Customs Tariffs," usually referred to as the Brussels Nomenclature, exerted great influence on the arrangement of the proposed revised schedules of the Tariff Act of 1930. The Brussels Nomenclature is considered a source of legislative history and its explanatory notes have been used as a guide to the intention of the Tariff Commission and of the Congress when the phraseology of the tariff schedules is substantially similar. Herbert G. Schwarz, dba Ski Imports v. United States, 57 CCPA 19, C.A. D. 971, 417 F.2d 1391 (1969); W. R. Filbin & Co., Inc. v. United States, 63 Cust.Ct. 200, C.D. 3897, 306 F.Supp. 440 (1969), and cases cited; Edo Commercial Corp. et al. v. United States, 65 Cust. Ct. 30, C.D. 4049 (1970); Sato Shoji, Inc. v. United States, 67 Cust.Ct. 258, C.D. 4282 (1971), and cases cited.

A comparison of Chapter 87 of the Brussels Nomenclature and schedule 6, part 6, subpart B of the tariff schedules discloses a similarity in the arrangement of the various provisions covering motor vehicles and in the language used. Heading 87.03 provides:

> Special purpose motor lorries and vans (such as breakdown lorries, fire-engines, fire-escapes, snow-ploughs, spraying lorries, crane lorries, searchlight lorries, mobile workshops and mobile radiological units), but not including the motor vehicles of heading No. 87.02 [motor vehicles for the transport of persons, goods or materials].

The Explanatory Notes to said heading (vol. III, ch. 87, heading 87.03, p. 994) state:

> This heading covers motor vehicles specially constructed and equipped with various devices to enable them to perform certain special non-transport functions; i. e., the primary purpose of the vehicles of the present heading is not the transport of persons or goods.

Thus, there is a clear nexus between the Brussels provision and that of the tariff schedules in that both cover motor vehicles specially constructed and equipped to perform special services or functions. The exemplars in the superior heading to item 692.16 of the tariff schedules are described in the Explanatory Notes to the Brussels Nomenclature, as follows:

> (1) Motor breakdown lorries consisting of a lorry chassis, with or without a floor, equipped with lifting gear such as cranes, trestles, pulleys, winches, etc.
>
> (2) Motor pump vehicles, with a pump usually driven by the vehicle's engine (e. g., fireengines).
>
> \*    \*    \*    \*    \*    \*
>
> (7) Crane lorries (i. e., cranes mounted on a motor vehicle chassis of sturdy construction).
>
> \*    \*    \*    \*    \*    \*
>
> (10) Lorries with built-in concrete mixers for the preparation of concrete, including those capable of use both for transport and mixing.

\* \* \* \* \* \*

(13) Mobile clinics (medical and dental) with operating theatre, anaesthetic equipment and other surgical apparatus.

Other articles are also described, including

(8) Mobile derricks (i. e., lorries fitted with a derrick assembly, winches and other appliances for drilling, etc.).

It is evident that the drafters of both the tariff schedules and of the Brussels Nomenclature were aware of the fact that special purpose vehicles might consist of trucks, lorries, or chassis plus various devices fitted thereon, equipping them for special purposes or functions. There is no indication that they or the Congress intended that the vehicle component *per se* had to be so constructed as to be limited to a special use. It is sufficient if the unit be specially constructed and equipped for special services or functions. Merchandise is classified in its condition as imported. United States v. Baker Perkins, Inc., et al., 46 CCPA 128, 131, C.A.D. 714 (1959).

In an analogous situation, this court held recently that imported merchandise composed of a basic unit consisting of a revolving base, hoist mechanism and engine, a cab and a truck frame, mounted on a tractor-type undercarriage, designed and used for harvesting sugar in Hawaii, was classifiable as harvesting machinery, even though the components could be and were used in other combinations for other purposes. Theo H. Davies & Co., Ltd. v. United States, 70 Cust.Ct. ——, C. D. 4399 (1973).

I conclude that the instant tracked vehicles equipped with drills, imported in assembled or unassembled condition, were properly classified under item 692.-16, Tariff Schedules of the United States, as modified, as motor vehicles specially constructed and equipped to perform special services or functions. Whether or not they are Canadian articles, as defined in general headnote 3(d) (ii), *supra*, they are not entitled to free entry, since there is no free entry provision for motor vehicles specially constructed and equipped to perform special services or functions, if products of Canada.

For the reasons stated, the action is dismissed. Judgment will be entered accordingly.

SCHEDULE OF CASES

| Court No. | Plaintiff | Entry |
|---|---|---|
| 70/55515–12 | The Carrington Co. | X–04 |
| 70/55516–13 | United Geophysical Corp. | X–035 |
| | | X–038 |
| | | X–039 |
| | | X–063 |
| | | X–064 |
| | | X–102 |
| | | 100189 |
| | | 100190 |
| | | 100204 |

Entries retained for appeal time.